**Joseph Carl SHAW, Petitioner,**

v.

**Joseph R. MARTIN, Warden, Central Correctional Institution, and Hon. Daniel R. McCleod, Attorney General for South Carolina, Respondents.**

**No. 79–6819.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 13, 1979.

Decided Jan. 2, 1980.

Dallas D. Ball, Kermit S. King, W. Thomas Vernon, William Gambrell, Columbia, S. C., Richard H. Burr, Nashville, Tenn., Richard Shapiro, New Orleans, La., John Charles Boger, New York City, for petitioner.

Brian Gibbes, Asst. Atty. Gen. Columbia, S. C., for respondents.

Before JAMES DICKSON PHILLIPS, Circuit Judge, Fourth Judicial Circuit.

JAMES DICKSON PHILLIPS, Circuit Judge:

This matter came before me at 8:00 A.M. on December 13, 1979, on the application of Joseph Carl Shaw for an order staying execution of the death sentence imposed upon him by the State of South Carolina and scheduled for 5:00 A.M., December 14, 1979. For reasons that follow I decided to grant the stay on certain conditions looking to the expeditious pursuit by Shaw of traditional avenues of post-conviction review in state and federal courts that have not yet been exhausted and that would otherwise be foreclosed.

The application was made to me as a single circuit judge acting under the power conferred by 28 U.S.C. § 2251 to grant stays of execution in pending habeas corpus proceedings, incident to appeal by Shaw from the denial of his petition for habeas corpus and application for stay of execution made to the United States District Court for the District of South Carolina, Honorable Robert W. Hemphill. The application was considered on a stipulated hearing record and the oral arguments of counsel for Shaw and for the State of South Carolina.

The record consisted of the following items in addition to the application itself: 1) Order of the district court denying stay; 2) Petition to district court for Writ of Habeas Corpus and Application for Stay of Execution (filed by appointed counsel); 3) Supplemental Petition for Writ of Habeas Corpus and Application for Stay (filed by retained counsel); 4) Return to Petition for Writ of Habeas Corpus filed by State; 5) Opinion of the Supreme Court of South Carolina affirming conviction; 6) Tran-

script of Record on Appeal to State Supreme Court; 7) Application for certificate of probable cause to appeal and for appeal in forma pauperis; 8) Stipulation of counsel re State Supreme Court's denial of motion of appointed counsel to be relieved; 9) Motion of appointed counsel to State Supreme Court for relief from representation and for stay of execution; 10) Authorization by Shaw for representation by retained counsel; 11) Stipulated chronology of proceedings.

Representing the Petitioner Shaw at the hearing were Messrs. Dallas D. Ball, Kermit S. King, W. Thomas Vernon, and William Gambrell, all of the South Carolina bar; and Messrs. Richard Burr, Richard Shapiro, and John Boger (of counsel) of the Southern Prisoners' Defense Fund of Nashville, Tennessee.

Representing the State of South Carolina was the Honorable Brian Gibbes, Assistant Attorney General.

## I

At the outset, I was concerned about the status of the various attorneys appearing for Shaw, and, for reasons that I considered relevant to determination of the application, sought to establish that status for the record. These facts appeared.

Messrs. Ball and King were appointed by the State of South Carolina to defend Shaw in the early stages of the criminal prosecution, and have represented him throughout. Mr. Vernon was added to the appointed defense team by subsequent appointment by the State; and Mr. Gambrell is an associate in Mr. King's law firm. This group of attorneys is hereafter referred to as "appointed counsel."

Messrs. Burr and Shapiro associated with the Southern Prisoners' Defense Fund, were retained by Shaw, first orally, then by written authorization filed in the record of this proceeding. Mr. Boger, associated with the Legal Defense Fund of the NAACP, appeared of counsel to the Southern Prisoners' Defense Fund, having been associated by Messrs. Burr and Shapiro. This group of attorneys is hereafter referred to collectively as "retained counsel."

## II

The salient facts before me on this application are quickly stated. The hideously brutal crimes of which Shaw stands convicted occurred on October 29, 1977. Shaw and two others were arrested on November 3, 1977, and each was indicted for two counts of murder, two counts of conspiracy, rape, kidnapping, and armed robbery. On the advice of his court-appointed counsel, Shaw pled guilty to the crimes charged to him on December 12, 1977. On December 16, 1977, after a sentencing hearing, a state trial judge sentenced Shaw to death.

Shaw timely appealed to the Supreme Court of South Carolina which, on May 28, 1979, affirmed the conviction and death sentence. On August 24, 1979, appointed counsel then timely petitioned the Supreme Court of the United States for writ of certiorari. On November 13, 1979, the Supreme Court denied the petition. Shaw's appointed counsel received notice of the denial on November 15, 1979, and immediately began considering the steps now to be taken in discharge of their obligations of representation. At this time the Supreme Court of South Carolina, acting pursuant to a state statute, S.C.Code § 17–25–370, which directs setting of the execution of a death sentence on a date four weeks after affirmance of a judgment of conviction, set the execution for 5:00 A.M. on December 14, 1979.

On November 28, 1979, in the course of consultation with his appointed counsel about legal steps that might now be taken to obtain further review, Shaw suggested a possible desire to have raised the issue of ineffectiveness of the assistance provided him by those counsel. On November 30, 1979, in further consultation, he confirmed a specific desire to raise this issue by appropriate means. At this time he had employed no other counsel.

Presented with an obvious problem of professional responsibility by this development, Shaw's appointed counsel, facing an execution date only two weeks away, now

sought means by which they might continue their representation in protection of Shaw's rights and at the same time expedite the retention of other counsel to present any claim of ineffective assistance of counsel thought warranted. To this end, appointed counsel then moved expeditiously on several fronts. They first filed a motion and conferred on November 30, 1979, with the state trial judge whom they considered empowered to relieve them of representation responsibilities so that other counsel could take over. Advised, however, on December 4, 1979, to file their motion to be relieved as appointed counsel and for stay of execution pending retention of new counsel in the Supreme Court of South Carolina, they did so on December 6, 1979. On December 10, 1979, the State Supreme Court heard this motion on the record and oral arguments; and on the same day denied it without stating its reasons.

While these proceedings were underway, appointed counsel on December 8, 1979, filed a timely petition in the Supreme Court of the United States for rehearing of the petition for certiorari. This had not been acted upon at the time of the hearing before me.

Contemporaneously with these efforts, appointed counsel undertook the responsibility of seeking out new counsel who might be competent, independent, and acceptable to Shaw as retained counsel. It was by this means that Mr. Burr of the Southern Prisoners' Defense Fund was put in touch with Shaw. As a result of this contract and ensuing conference, Shaw first orally, then in writing, retained the attorneys associated with the Southern Prisoners' Defense Fund who appeared with appointed counsel at the hearing before me.

Following the denial on December 10, 1979, of their motion in the State Supreme Court, appointed counsel filed a petition for habeas corpus and for stay of execution incident thereto in the United States District Court for the District of South Carolina. The habeas petition was based upon a claimed denial by the State of Shaw's *present* right to effective assistance of counsel by its action in denying appointed counsel's motion to be relieved, with the consequence of Shaw's practical inability to pursue within the short time remaining to him the post-conviction remedies provided by the State.

Retained counsel also filed in the district court a supplemental petition for habeas corpus and application for stay which raised, among other issues, one of ineffective assistance of appointed counsel. Following a hearing on December 12, 1979, the district judge denied the petitions and the applications for stay. In an accompanying memorandum the district judge noted that no state post-conviction proceedings had been instituted by Shaw, and based his denial on a determination that the petitioner had not met the burden of showing constitutionally ineffective assistance of appointed counsel. This determination was made on the basis of the state court record, and judicial notice of the general competence and expertise of appointed counsel. The court did not address any of the several additional grounds presented in retained counsel's supplemental petition, nor did it specifically address appointed counsel's claim of a present denial of effective assistance by reason of the state's refusal to relieve appointed counsel and grant a stay to allow new counsel an opportunity to assume representation and take such action as they might deem appropriate.

Shaw then noted appeal to the United States Court of Appeals for the Fourth Circuit and applied to me for stay of execution incident to the appeal. I was advised at the hearing before me that following the denial of relief in district court, Shaw, through his retained counsel, had now commenced statutory post-conviction proceedings in the state court system, and have assumed that to be the fact.

III

There is no developed body of precedent to guide the decision to grant or deny a stay of imminent execution of a death sentence. The wholly unique situation presents a wholly unique problem in the administra-

tion of criminal justice. Mr. Justice Rehnquist has captured both the general situation and the problem, and has appropriately identified the essential considerations for decision in the course of explaining his recent grant of stay in *Evans v. Bennett*, 440 U.S. 1301, 99 S.Ct. 1481, 59 L.Ed.2d 756 (1979).

> There must come a time, even when so irreversible a penalty as that of death has been imposed upon a particular defendant, that the legal issues in the case have been sufficiently litigated and relitigated so that the law must be allowed to run its course. If the holdings of our Court in *Proffitt v. Florida*, 428 U.S. 242 [96 S.Ct. 2960, 49 L.Ed.2d 913] (1976), *Jurek v. Texas*, 428 U.S. 262 [96 S.Ct. 2950, 49 L.Ed.2d 929] (1976), and *Woodson v. North Carolina*, 428 U.S. 280 [96 S.Ct. 2978, 49 L.Ed.2d 944] (1976) are to be anything but dead letters, capital punishment when imposed pursuant to the standards laid down in those cases is constitutional; and when the standards expounded in those cases and in subsequent decisions of this Court bearing on those procedures have been complied with, the State is entitled to carry out the death sentence. Indeed, just as the rule of law entitles a criminal defendant to be surrounded with all the protections which do surround him under our system prior to conviction and during trial and appellate review, the other side of that coin is that when the State has taken all the steps required by that rule of law, its will, as represented by the legislature which authorized the imposition of the death sentence, and the state courts which imposed it and upheld it, should be carried out.

*Id.* at 1303, 99 S.Ct. at 1483.

This, it seems to me, defines as well and fully as can be the relevant considerations. In the final analysis, there is required a practical judgment whether in the particular situation "the legal issues have been sufficiently litigated and relitigated that

the law must be allowed to run its course"; and whether the criminal defendant's entitlement to "all the protections which . . . surround him under our system prior to conviction and during trial *and appellate review*" [emphasis mine] have been accorded.

■ My judgment, simply put, is that that point cannot fairly be thought to have been reached in this case. To deny a stay in the circumstance presented to me would be to prevent the following *first instance* decisions being made in matters now actually pending in the courts, each in an accepted, traditional avenue of post-conviction review of state court criminal convictions: 1) a pending petition for rehearing of the denial of certiorari by the Supreme Court of the United States; 2) a pending appeal in the United States Court of Appeals from the denial by the district court of a first petition for habeas corpus; 3) a pending post-conviction proceeding in the state court system. None of these represents an attempt to relitigate an issue already decided by the same tribunal before which it is pending. Each, as indicated, lies within avenues of review so long and so well established that they must be counted among the basic "protections" with which our system has "surrounded" all persons convicted of crime. Under these circumstances it seems imperative to me that the jurisdiction of these courts to address the issues already regularly pending before them must be preserved against mooting by execution of the death sentence.[1]

I have been mindful that even with respect to issues pending for first instance resolution, it may be appropriate to require a facial showing of substance to justify a stay. *See, e. g., Rosenberg v. United States*, 346 U.S. 273, 288, 73 S.Ct. 1152, 97 L.Ed. 1607 (1953). But it seems to me that the inquiry into substance properly stops with identification of the nature of the issue, and with consideration as to whether

---

1. In strict contemplation it is presumably the case that my power under 28 U.S.C. § 2251 extends only to preservation of the jurisdiction of the court of appeals and the district court

before whom the petition for habeas corpus is pending. In practical effect the stay thus operates to preserve the jurisdiction of all courts against mooting.

it has been already fairly litigated on the merits under procedures designed for the purpose. In the very nature of proceedings on a motion for a stay of execution, the limited record coupled with the time constraints imposed by imminence of execution preclude any fine-tuned inquiry into the actual merits. On the record before me, the issues presently pending in the several courts must be accounted issues of substance that have not yet been addressed by those courts and that can properly be addressed only by them in the regular course of their procedures. It is on this essential basis that I conclude that the jurisdiction of those tribunals must be preserved for this purpose by stay of execution.

On this point I consider it of particular significance that the Supreme Court of South Carolina has expressly recognized that the issue of ineffective assistance of counsel is one properly addressed in the first instance by a trial court equipped to make the necessary factual inquiry. In *Rogers v. State*, 261 S.C. 288, 199 S.E.2d 761 (1973) the court noted that the application of a defendant convicted of rape for post-conviction relief under state procedures "was based entirely upon his claim that he did not have the effective assistance of counsel because of their incompetency in violation of his rights under the provisions of the Constitution of the United States. "This allegation," the court continued, "set forth a *prima facie* violation of the [defendant's] constitutional rights, and raised a question of fact which could only be determined in the lower court by an evidentiary hearing." *Id.*, 199 S.E.2d at 762. This bespeaks a perception, with which I fully concur, that claims of constitutionally ineffective assistance of counsel, certainly when concerned with representation in capital cases, cannot adequately be determined on a bare inspection of the documentary record and by taking judicial notice of the general integrity, skill, and professional responsibility of counsel. To deny a stay here would

be to prevent prosecution of a pending state post-conviction proceeding designed to conduct exactly the sort of inquiry mandated in *Rogers* as a matter of procedural right. Beyond that it would effectively foreclose any federal collateral review with benefit of a state evidentiary record on an issue as to which the jurisdiction of the federal courts has been invoked.

## IV

■ I have considered the possibility of deliberate dilatoriness in the assertion of the protections to which Shaw, as any other, is entitled under the rule of law. The state is obviously entitled finally to exercise its legislative will without subjection to that tactic, however understandable may be the impulse to employ it against the irreversible judgment it defers. The constitutionally enforceable obligation to stay execution runs only to the point where all the post-conviction protections have been fairly accorded and not beyond into the realm of mere possibility that something not yet considered may yet emerge in the minds of old or new counsel, or that error of substance in decisions already made may emerge from the same source. There have been some suggestions in this matter of a calculated effort to create by eleventh-hour tactics a crisis of time to maximize the chance of last-minute judicial reprieve out of an abundance of caution. I reject any such suggestion.

Without exhaustive recapitulation of the course of proceedings earlier summarized, I am satisfied that the record reveals an exercise of expedition in the assertion of rights that utterly belies the suggestion. The essential problem in terms of time and its effective utilization to this point flows from the legislatively imposed four-week time frame between affirmance of conviction upon direct appeal and mandated execution date rather than any apparent dilatoriness of counsel.[2]

---

2. It is completely unrealistic to suppose a practical ability to exhaust normal avenues of post-conviction review provided by both state and federal law within such a time frame, even

were every step to be taken within the shortest conceivable time by both litigants and courts. The mandatory execution date is of course subject to deferral by either executive or judicial

Finally, I have considered the question of the authority of the persons who before me claimed the right to represent Shaw at this stage of the proceedings. This is a matter of rightful concern in assessing the right of the state to exercise its legislative will free of unauthorized intrusions into the legal process by persons seeking to stay an execution. I am satisfied of the *bona fides* of the representation. In view of the awkwardness of the situation created for appointed counsel by Shaw's desire to raise the issue of the effectiveness of their assistance, the conduct of both appointed and retained counsel in the matter before me was of the highest order.

On this point, appointed counsel renewed before me a prayer that they be now relieved as counsel. I declined to do this, on two bases. First, I doubt the propriety of asserting such a power in the limited context in which I was acting on an application for stay. Second, it seemed obvious that Shaw's effective representation in the matter before me could best be undertaken by joint representation under the lead of his retained counsel. This arrangement was agreed to by both sets of counsel and was handled in a professionally exemplary manner by both. The matter of further representation seems to me best left to other tribunals in subsequent proceedings.

### V

For the reasons given, an order staying execution for the stated and limited purpose of allowing expeditious pursuit of available avenues of post-conviction review has been entered. In recognition of the continuing obligation of this court in the matter, jurisdiction of the order is retained in the district court, whose order denying stay is vacated. To emphasize the court's continuing obligation to protect the interests of the state as recognized in this opinion, the willingness of the court to entertain motions by the state suggesting a failure of expeditious pursuit of remedies by the petitioner is expressly noted. In deference to principles of comity, and in direct response to a suggestion of the Assistant Attorney General for the State of South Carolina, the order also expresses a willingness to entertain a motion by the state to dissolve this stay order if, as was represented might eventuate, the Supreme Court of South Carolina should resolve itself to stay the execution pending exhaustion of post-conviction review procedures.

SO ORDERED.

stay orders, and these are practically invited by the law unless both courts and the executive are prepared to allow state and federal procedural rights of review duly set in motion within the four-weeks period to be foreclosed practically at the threshold by execution of the defendant.