Theodore Robert **BUNDY,** Petitioner,

v.

**Louie L. WAINWRIGHT,** as Secretary, **Florida Dept. of Corrections,** Respondent.

**No. 86–1421–Civ.**

United States District Court, S.D. Florida, N.D.

July 2, 1986.

John F. Evans, Holly R. Skolnick, Zuckerman, Spaeder et al., Coral Gables, James E. Coleman, Polly J. Welson, Wilmer,. Cutler et al, Washington, D.C., for petitioner.

Gregory G. Costas, Asst. Atty. Gen., for respondent.

ZLOCH, District Judge.

THIS MATTER is before the Court upon the Petitioner, THEODORE ROBERT BUNDY'S, Petition For Writ of Habeas Corpus (DE 1) and Application For A Stay Of Execution (DE 3).

Petitioner was convicted of two counts of murder in the first degree and other crimes by verdict dated July 24, 1979. Thereafter, the court sentenced Petitioner to death for each of the murder convictions and imposed various terms of imprisonment on the other charges.

Thereafter, the Petitioner filed various post-conviction motions which were denied by the trial court.

Petitioner appealed from these judgments and the sentence of death to the Florida Supreme Court in the Fall of 1979. The Supreme Court of Florida affirmed the convictions and sentences in Opinion dated June 21, 1984. *Bundy v. State*, 455 So.2d 330 (Fla.1984).

Thereafter, the Petitioner filed a *pro se* Motion For A Stay Of Execution in the United States Supreme Court, which Motion was denied, without prejudice, by Order of that court dated February 18, 1986.

The Petitioner, after obtaining present counsel, filed a motion in the Florida Supreme Court seeking a stay of execution pending a decision by the United States Supreme Court on his Petition For Certiorari. The Florida Supreme Court rejected the Petitioner's motion aforementioned in an Opinion dated February 24, 1986. Immediately thereafter, the Petitioner, through his present counsel, filed an Application For A Stay Of Execution in the United States Supreme Court on February 24, 1986. On February 26, 1986, the United States Supreme Court granted the stay pending its consideration of Petitioner's Petition for Certiorari.

Thereafter, on May 5, 1986, the United States Supreme Court denied Petitioner's Petition For Writ of Certiorari and on May 22, 1986, the Governor of the State of Florida again signed a Death Warrant in Petitioner's case. The execution was set for 7:00 a.m. on Wednesday, July 2, 1986.

Thereafter, the Petitioner, through his present counsel, filed on June 23, 1986, an Application For A Stay Of Execution with the supporting Affidavits and a Renewed Motion For Payment Of Reasonable Fees and Expenses of Experts. Following a hearing on June 25, 1986, the trial court denied the Application. The Petitioner immediately appealed this decision to the Florida Supreme Court, which affirmed the decision of the trial court in a per curiam order on June 26, 1986, without prejudice, to file a Motion for post-conviction relief in the trial court.

Thereafter, the Petitioner filed motions for post-conviction relief with the trial court which were denied. The Petitioner immediately appealed the denial of his motions to the Supreme Court of Florida. The Supreme Court of Florida affirmed the denial by the trial court of the Petitioner's motion filed pursuant to Florida Rule of Criminal Procedure 3.850 by Opinion dated June 30, 1986.

The Petitioner then filed with this Court his Application For A Stay Of Execution

and Petition For Writ of Habeas Corpus at 4:00 p.m. on June 30, 1986.

The Petitioner bases his Application For A Stay Of Execution and Petition For Writ of Habeas Corpus on various alleged claims, constitutional and otherwise.

During oral argument before the Court on July 1, 1986, on the Application and Petition aforementioned, counsel for the Petitioner specifically directed this Court's attention to four (4) points which counsel for Petitioner stated in open court that he considers to be the four (4) crucial points regarding the Petitioner's Application and Petition. Those four (4) points were: (1) that the Petitioner was denied a fair trial by the state court; (2) that the post-hypnotic testimony violated the Petitioner's constitutional rights in that it hindered cross examination and it affected how the testimony was presented on direct examination; (3) that the Petitioner did not receive a full and fair inquiry into Petitioner's competency to stand trial; and (4) that the Petitioner was denied the right to effective assistance of counsel.

The Court notes that although counsel for the Petitioner did state to the Court that the Application and Petition aforementioned did contain additional points upon which the Petitioner relied, that at no time during argument before the Court did counsel for the Petitioner direct the Court's attention to any federal constitutional claims that either were or were not previously presented for consideration to the Supreme Court of Florida other than the four (4) points aforementioned which counsel for the Petitioner concedes are the crucial points. Further, the Court notes that counsel for the Petitioner conceded that all of the four (4) crucial points aforementioned were previously considered by the trial court and the Supreme Court of Florida.

■ Regarding the Application For A Stay Of Execution, the Court is mindful of the standards set forth in *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), in *Shaw v. Martin*, 613 F.2d 487 (4th Cir.1980), and in *Dobbert*

*v. Strickland*, 670 F.2d 938 (11th Cir.1982). In *Barefoot*, the United States Supreme Court noted that applications for stays of death sentences are expected to contain the information and materials necessary to make a careful assessment of the merits of the issue and so reliably to determine whether plenary review and a stay are warranted. In *Shaw*, the Fourth Circuit Court of Appeals stated that the defendant is not even required to show that the post-conviction issues have "facial substance." All that is required is (1) "identification of the nature of the issues" and (2) a showing that the issues have not "been ... fairly litigated on the merits under procedures designed for the purpose." In *Dobbert*, the Eleventh Circuit has expressly applied this standard in staying the execution of death sentences pending judicial consideration of post-conviction issues.

This Court finds that the Petitioner has failed to meet his burden that the points to which counsel for the Petitioner directs this Court's attention were not fully and fairly litigated on the merits in the state court proceedings which are now going on seven (7) years nor does the Application on its face provide a sufficient showing for this Court to make a reliable determination that a plenary review is required.

This Court is also mindful of the standard set forth in *O'Bryan v. Estelle*, 691 F.2d 706 (5th Cir.1982) regarding an application for stay under 28 U.S.C. Section 2251 in deciding whether to issue a stay, the court must consider:

"(1) Whether the movant has made a showing of likelihood of success on the merits (and the Court finds that the Petitioner has not met this burden);

(2) Whether the movant has made a showing of irreparable injury if the stay is not granted (the Petitioner has met this burden);

(3) Whether the granting of a stay would substantially harm the other parties (the Court finds that no harm to other parties would result if the stay is granted); and

(4) Whether the granting of the stay would serve the public interest (the Court finds that the granting of a stay in this instance would not serve the public interest)."

The Court notes that while the movant need not always show a probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities (i.e., the other three factors) weigh heavily in the favor of granting the stay. The Court finds that the Petitioner has not met this burden. With respect to the Petition For Writ Of Habeas Corpus, the Court notes the Opinion of the United States Supreme Court in *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), wherein the United States Supreme Court opined the following:

"Federal habeas has been a source of friction between state and federal courts and Congress obviously meant to alleviate some of that friction when it enacted subsection (d) in 1966 as an amendment to the original Federal Habeas Act of 1867 ... A writ issued at the behest of a petitioner under 28 USC 2254 is in effect overturning either the factual or legal conclusions reached by the state-court system under the judgment of which the petitioner stands convicted and friction is a likely result.... But, it is clear that in adopting the 1966 amendment, Congress in Section 2254(d) intended not only to minimize that inevitable friction but also to establish that the findings made by the state-court system 'shall be presumed' to be correct' unless one of seven conditions specifically set forth in Section 2254(d) was found to exist by the federal habeas court. If none of those seven conditions were found to exist, or unless the habeas court concludes that the relevant state-court determination is not 'fairly supported by the record', 'the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.''

In addition, the Court is mindful of the holding of the Eleventh Circuit in the case of *Griffin v. Wainwright,* 760 F.2d 1505 (11th Cir.1985) where the Eleventh Circuit Court of Appeals stated:

"A writ of habeas corpus issued pursuant to 28 U.S.C.A. Section 2254 (West 1977) in effect vacates either the factual or legal conclusions reached by the state-court system under which the petitioner was convicted. Congress, however, in 28 U.S.C.A. Section 2254(d) intended not only to minimize the inevitable friction between the state and federal courts but to mandate that factual findings made by the state-court system 'shall be presumed to be correct.' This presumption of correctness attaches unless one of seven conditions specifically set forth in 28 U.S.C.A. Section 2254(d) is found to exist by the federal habeas corpus court where the court concludes that the relevant state court determination is not 'fairly supported by the record.' Title 28 U.S.C.A. Section 2254(d)(8). On appeal, the burden rests upon the appellant to establish by convincing evidence that the state court findings of fact are erroneous or that one of the seven conditions set forth in 28 U.S.C.A. Section 2254(d) exists.''

The Court finds that the Petitioner has failed to meet this burden in either his oral argument or on the face of his Petition For Writ of Habeas Corpus filed herein.

■ Regarding the issue raised by the Petitioner of the constitutionality of the admission of post-hypnotic testimony, the findings of the state court on this issue carry a presumption of correctness pursuant to Section 2254(d) having been fully and fairly litigated on the merits before the Supreme Court of Florida as contained in that court's Opinion cited at 455 So.2d 330 (Fla.1984). Indeed, counsel for the Petitioner concedes in his oral argument that this matter was previously presented to the Supreme Court of Florida.

Regarding the adequacy of a full and fair competency hearing, the Court notes that the findings of the state court also carry the presumption of correctness under

Section 2254(d). Counsel for the Petitioner also concedes in his oral argument that this matter was litigated before the trial court in Petitioner's Motion Under Florida Rule of Criminal Procedure 3.850, which was considered by the trial court and which was considered by the Supreme Court of Florida as recently as June 30, 1986, wherein by written Opinion, the Supreme Court of Florida in considering Petitioner's appeal on the issue that the trial court erred by failure to conduct a full and fair inquiry into appellant's (Petitioner's) competency to stand trial stated:

"Appellant's first contention is without merit because in fact there was a proper competency hearing."

Regarding Petitioner's point that he did not receive a full and fair hearing/trial, the Court notes that the findings of the state court on this issue carry a presumption of correctness pursuant to Section 2254(d) and was fairly and fully litigated on the merits and presented to the Supreme Court of Florida as reflected in that court's Opinion. See *Bundy*, 455 So.2d 330.

The United States Supreme Court in the case of *Sumner* further stated:

"When it enacted the 1966 amendment to 28 USC Section 2254, Congress specified that in the absence of the previously enumerated factors one through eight, the burden shall rest on the habeas petitioner, whose case by that time had run the entire gambit of a state judicial system, to establish 'by convincing evidence that the factual determination of the State Court was erroneous'. 28 USC Section 2254(d). Thus, Congress meant to insure that a state finding not be overturned merely on the basis of the usual 'preponderance of the evidence' standard in such a situation.... Moreover, such a statement will have the obvious value of enabling courts of appeals and this Court to satisfy themselves that the Congressional mandate has been complied with. No court reviewing the grant of an application for habeas corpus should be left to guess as to the habeas court's reasons for granting relief notwithstanding the provisions of Section 2254(d)."

The Court is mindful of the Fourth Circuit's statements in *Shaw v. Martin*, 613 F.2d 487 (4th Cir.1980) at 490, 491 where that court opined:

"The wholly unique situation presents a wholly unique problem in the administration of criminal justice. Mr. Justice Rehnquist has captured both the general situation and the problem, and has appropriately identified the essential considerations for decision in the case of explaining his recent grant of stay in *Evans v. Bennett*, 440 U.S. 1301, 99 S.Ct. 1481, 59 L.Ed.2d 756 (1979).

There must come a time, even when so irreversible a penalty as that of death has been imposed upon a particular defendant, that the legal issues in the case have been sufficiently litigated and relitigated so that the law must be allowed to run its course. If the holdings of our Court (cases cited therein) are to be anything but dead letters, capital punishment when imposed pursuant to the standards laid down in those cases is constitutional; and when the standards expounded in those cases and in subsequent decisions of this Court bearing on those procedures have been complied with, the state is entitled to carry out the death sentence. Indeed, just as the rule of law entitles a criminal defendant to be surrounded with all the protections which do surround him under our system prior to conviction and during trial and appellate review, the other side of that coin is that when the state has taken all the steps required by that rule of law, its will, as represented by the legislature which authorized the imposition of the death sentence, and the state courts which imposed it and upheld it, should be carried out.

This, it seems to me defines as well and fully as can be the relevant considerations. In the final analysis, there is required a practical judgment whether in the particular situation 'the legal issues have been sufficiently litigated and relit-

igated that the law must be allowed to run its course'; and whether the criminal defendant's entitlement to 'all the protections which ... surround him under our system prior to conviction and during trial and appellate review have been acorded.' "

See also *O'Bryan v. Estelle,* 691 F.2d 706 (5th Cir.1982).

Regarding Petitioner's last point to which his counsel has specifically directed this Court's attention, the Court notes that the Supreme Court of the United States has recently reexamined the contours of the Sixth Amendment's guarantee of the right to effective assistance of counsel. *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Cronic,* the Supreme Court held that the issue of counsel's effectiveness could be addressed only in light of the purpose for which counsel was guaranteed, that being to insure that the adversary system of justice functioned properly. The Court then held that, "... the right to effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the cruciable of meaninful adversarial testing."

The Supreme Court also stressed that it was the defendant's burden to prove incompetence rising to the level of a constitutional violation, and that the Sixth Amendment's guarantee was generally not implicated where there was no showing that the incompetence of counsel had affected the reliability of the trial process.

Having laid out the basis for and the scope of the Sixth Amendment's right in *Cronic,* the Supreme Court then discussed the details of the issue of ineffective assistance of counsel in *Washington.* The Supreme Court set out a two-step analysis of an ineffective assistance claim. First, the defendant would have to show that counsel's performance was deficient, such that "... counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."

Second, the defendant would have to show prejudice such that the errors deprived the defendant of a trial whose results would be reliable.

This Court further notes that the assistance rendered by an attorney will not be found "ineffective" if it is deemed a decision made by the attorney as part of his trial strategy. The law provides that counsel will not be regarded constitutionally deficient merely because of tactical decisions. That an attorney's strategy may appear wrong in retrospect does not automatically mandate constitutional ineffective representation. *Ford v. Strickland,* 676 F.2d 434 (11th Cir.1982); *Williams v. Wainwright,* 681 F.2d 732 (11th Cir.1982); *Sanchez v. U.S.,* 782 F.2d 928 (11th Cir. 1986).

The *Sanchez* case goes on to say that when a lawyer makes an informed choice between alternatives as tactical judgment, it will almost never been overturned on habeas corpus.

This Court finds based on the face of the Petition For Writ Of Habeas Corpus regarding the issue of ineffective assistance of counsel that the Petition shows that the decisions of trial counsel were strategy and as the Court has already noted, strategical decisions or tactical decisions are not a basis for declaring that there has been ineffective assistance of counsel. The Court notes, for example, that on page 74, paragraph No. 151 of the Petition For Writ Of Habeas Corpus, that the Petitioner specifically states when the Petitioner is directing the Court's attention to a decision by trial counsel, Mr. Harper, who was also appellate counsel, that Mr. Harper "Despite the representation that he had considered and decided against raising any...." and so forth, that this is only an example of strategy or tactical decisions made by counsel. The Court further finds that this issue has been litigated and relitigated both at the trial court level and before the Supreme Court of Florida as noted in that court's original 1984 decision, was once again presented to the trial court

in the Petitioner's Motion under Florida Rule of Criminal Procedure 3.850 and was once again considered and ruled upon by the Supreme Court of Florida on June 30, 1986 when in commenting on the issue that the appellant (Petitioner) was denied the right to effective assistance of counsel, the Supreme Court of Florida stated:

> "We reject the second contention because appellant has failed to show any deficiency of performance on the part of his trial counsel."

Furthermore, this Court finds that the Petition For Writ Of Habeas Corpus on its face fails to show that this matter has not been fully and fairly litigated and relitigated on the merits in the state court proceedings and that the Petition on its face fails to show otherwise.

Regarding the remaining issues contained in the Petition For Writ Of Habeas Corpus which have not been specifically addressed herein and to which counsel for the Petitioner has not specifically directed this Court's attention, the Court finds that the Petition on its face regarding those points fails to meet the burdens enunciated above. The Court notes that the Petitioner is bound by the Petition and Application that he has presented to this Court for its review.

The Court notes that in its oral ruling presented in open court on July 1, 1986, this Court specifically reserved the right to elaborate, expand and/or modify its oral ruling in this Court's written Order which was to subsequently follow.

Lastly, this Court noting the statements of the United States Supreme Court in *Evans v. Bennett*, 440 U.S. 1301, 99 S.Ct. 1481, 59 L.Ed.2d 756 (1979) as recited in the *Shaw* case, that there comes a time when respect must be given to state court proceedings where the record is clear that this matter has been litigated and relitigated both at the trial court level and before the Supreme Court of the State of Florida and must come to an end.

The Court having carefully considered the merits of the Petition For Writ Of Habeas Corpus and the Application For A Stay Of Execution, having carefully considered argument of counsel, having reviewed the court file and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED as follows:

1. That the Application For A Stay Of Execution be and the same is hereby DENIED; and

2. That the Petition For Writ Of Habeas Corpus be and the same is hereby DENIED, and the above-styled cause is DISMISSED.