EVANS *v.* BENNETT, CORRECTIONAL
COMMISSIONER, ET AL.

No. A–868.  Decided April 5, 1979

MR. JUSTICE REHNQUIST, Circuit Justice.

This application for stay has come to me by reason of the unavailability of MR. JUSTICE POWELL. Applicant is the mother of John Louis Evans; her son was tried and convicted of robbery-murder and was sentenced to death pursuant to Alabama law by an Alabama trial court in April 1977. Evans did not contest his guilt at trial. Instead, he took the stand, confessed to the crime, and requested the jury to find him guilty so that he could receive the death penalty. His conviction and sentence were appealed (according to the application, against his will) under the Alabama automatic appeal statute, and the judgment and sentence were affirmed by the Alabama Court of Criminal Appeals and the Supreme Court of Alabama. *Evans* v. *State,* 361 So. 2d 654 (Ala. Crim. App. 1977); *Evans* v. *State,* 361 So. 2d 666 (Ala. 1978).  With his

approval, a petition for writ of certiorari seeking review of the sentence imposed upon him was filed in this Court in November 1978. On February 3, 1979, Evans' counsel, at Evans' insistence, filed a formal request for withdrawal of his petition for writ of certiorari, but both the petition for withdrawal and the petition for writ of certiorari were denied by this Court on February 21, 1979. *Evans* v. *Alabama, ante,* p. 930. Following that action by this Court, the Supreme Court of Alabama set an execution date of April 6, 1979.

According to the application for stay, John Louis Evans has refused to undertake any further appeals on his behalf and has repeatedly expressed his desire to die. On April 2, 1979—nearly six weeks after this Court had denied the petition for certiorari, and only four days before the execution date set by the Supreme Court of Alabama—applicant, the mother of the condemned killer, filed a petition for a writ of habeas corpus in the United States District Court in the Southern District of Alabama. That court heard oral argument on April 3, and following that argument dismissed the petition on the grounds that "the reason forwarded by petitioner for the inmate's failure to verify the petition, *i. e.,* incompetency is not supported by credible evidence, that Betty Evans is not entitled to next friend status by reason thereof, that accordingly, this Court has no jurisdiction over the action and the action must therefore be DISMISSED and the stay DENIED."

A timely notice of appeal was filed and the District Court issued a certificate of probable cause. On April 4, the applicant moved for a stay of execution in the Court of Appeals for the Fifth Circuit. That court likewise denied the application for a stay, reciting in its order:

"A majority of the Court concludes that a factual issue justifying standing in a next friend has not been made.

"Judge Hill would grant the stay in order to ascertain whether or not a mental deficiency short of incompetency would authorize proceedings by a next friend."

If I were casting my vote on this application for a stay as a Member of the full Court, I would vote to deny the stay. Evans has been found guilty of an atrocious crime, sentenced to be put to death in accordance with Alabama law, and has had his conviction and sentence reviewed both by the Alabama Court of Criminal Appeals and by the Supreme Court of Alabama. His petition for certiorari to review the judgments of those courts affirming his conviction and sentence was denied by this Court. A Federal District Court has denied a stay and dismissed the petition for habeas corpus filed by Evans' mother on his behalf, and a panel of the Court of Appeals for the Fifth Circuit also has denied a stay. There must come a time, even when so irreversible a penalty as that of death has been imposed upon a particular defendant, when the legal issues in the case have been sufficiently litigated and relitigated that the law must be allowed to run its course. If the holdings of our Court in *Proffitt* v. *Florida,* 428 U. S. 242 (1976), *Jurek* v. *Texas,* 428 U. S. 262 (1976), and *Woodson* v. *North Carolina,* 428 U. S. 280 (1976), are to be anything but dead letters, capital punishment when imposed pursuant to the standards laid down in those cases is constitutional; and when the standards expounded in those cases and in subsequent decisions of this Court bearing on those procedures have been complied with, the State is entitled to carry out the death sentence. Indeed, just as the rule of law entitles a criminal defendant to be surrounded with all the protections which do surround him under our system prior to conviction and during trial and appellate review, the other side of that coin is that when the State has taken all the steps required by that rule of law, its will, as represented by the legislature which authorized the imposition of the death sentence, and the state courts which imposed it and upheld it, should be carried out.

There is not the slightest doubt in my mind that the United States District Court made every effort to resolve doubts as to legal issues in favor of granting a stay, but was nonetheless

unable to find legal authority for granting the stay. My conclusion in this regard is supported by the following language from the opinion of that court:

"Having concluded that next friend applications are permissible in habeas corpus cases, it remains for the Court to determine whether this is such a case that a next friend petition ought to be allowed. Both *Funaro* [*United States ex rel. Funaro* v. *Watchorn,* 164 F. 152 (CA2 1908)] and *Preiser* [*United States ex rel. Sero* v. *Preiser,* 506 F. 2d 1115 (CA2 1974)] limited the use of such applications to incidents of infancy, incompetency, or lack of time, and the Court is unpersuaded that any other grounds are permissible. In the instant case the inmate is over the age of majority and adequate time exists for him to verify his own petition, so the petitioner must fail unless the inmate is incompetent.

"The only evidence presented to the Court in support of John Evans' incompetency is a sworn affidavit of a staff psychiatrist at the Mobile Mental Health Center. The psychiatrist, who has not personally interviewed or otherwise examined John Evans, concludes from conversations with other individuals that John Evans is 'not able to deal rationally with his situation and . . . probably need[s] someone else to make legal decisions affecting his life for him.' The affidavit further reveals that the doctor tried to arrange an interview between John Evans, himself, and a psychologist, but Evans refused to be evaluated. The evidence in rebuttal to the allegation of incompetency is quite strong. John Evans was evaluated prior to his murder trial and was determined fit to stand trial, and there is no indication of any intervening physical or mental disability arising between the time of trial and the filing of the petition in the instant case. Clearly one who is competent to stand trial is competent to make decisions as to the course of his future. At no time prior

to the filing of this petition, as far as the Court can ascertain, has John Evans' competency been questioned. The fact that Evans has elected not to pursue post-conviction remedies that would serve to forestall the impending execution is not controlling, since it may well be, as the media has advertised, that John Evans has confronted his option of life imprisonment or death by execution and has elected to place his debts on a new existence in some world beyond this. The Court finds no evidence of irrationality in this; indeed, in view of the allegations in the case of *Jacobs* v. *Locke,* the death row conditions of confinement case presently pending in this Court, it may well be that John Evans has made the more rational choice. In any event, this Court is not persuaded that John Evans is incompetent merely from a professional opinion rendered on hearsay information.[1]"

"[1] Evans' attorney stated during the hearing that he had observed no change in Evans' mental condition in the past two years, but of course, this counsel is without any training in psychiatry."

The application for stay cites a number of decisions relating to mental competency, none of which seem to me to bear directly on the issue in this case. The application states (p. 7):

"The criticism of the trial judge that the affidavit is based on hearsay is due solely to the fact that John Louis Evans refused to see the psychiatrist. Clearly Evans should not be allowed to control his mother's standing to raise issues on his behalf."

To my mind, this argument stands the question on its head: It is not Betty Evans, the applicant, who has been sentenced to death, but her son, and the fact that her son refuses to see a psychiatrist and has expressed a preference for electrocution rather than serving the remainder of his life in a penitentiary cannot confer standing upon her as "next friend" which she would not have under recognized legal principles.

Nonetheless, since this matter is not before the full Court, but simply before me as a Circuit Justice, I must act as surrogate for the full Court. The most closely analogous case to come before us in this posture is that of *Gilmore* v. *Utah,* 429 U. S. 1012 (1976). There, a majority of the Court denied an application for a stay of execution over the dissents of Mr. Justice White, joined by Mr. Justice Brennan and Mr. Justice Marshall, *id.,* ·at 1017, and of Mr. Justice Marshall, *id.,* at 1019, and Mr. Justice Blackmun, *id.,* at 1020. As I understand the dissent of Mr. Justice White, its linchpin was the absence of any consideration or decision as to the constitutionality of the Utah statute providing for the imposition of the death penalty by the Utah courts. Mr. Justice Marshall's dissent, as I read it, was based upon what he regarded as the inadequacy of the procedures provided by the State to determine the competency of the waiver by Gilmore of his right to appeal from the sentence imposed by the Utah trial court. Mr. Justice Blackmun's dissent expressed the view that the question of the standing of Gilmore's mother to raise constitutional claims on behalf of her son was not insubstantial, and should receive a plenary hearing from this Court.

Were this a case involving an issue other than the death penalty, I think I would be justified in concluding that because the Alabama Court of Criminal Appeals and the Alabama Supreme Court have fully reviewed Evans' conviction and sentence, the same considerations which led four Members of this Court to disagree with our denial of a stay of execution in Gilmore's case would not necessarily lead all of them to do so here. But because of the obviously irreversible nature of the death penalty, and because of my obligation as Circuit Justice to act as surrogate for the Court, I do not feel justified in denying the stay on that assumption.

I have therefore decided to grant a stay of the execution ordered by the Supreme Court of Alabama to be carried out at 12:01 a. m. on April 6, 1979, pending further consideration

by me, or by the full Court at its Conference scheduled for Friday, April 13, in the event that I should refer the application to that Conference, of the following submissions:

(a) a response by respondent Larry Bennett, Commissioner of the Alabama Correctional System, to this application for stay;

(b) a detailed explanation by counsel for applicant as to why, in a matter of this importance, she waited from February 21, 1979, the date upon which this Court denied John Louis Evans' petition for certiorari seeking to review the judgment of the Supreme Court of Alabama, until April 2, 1979, to file a petition for a writ of habeas corpus in the United States District Court for the Southern District of Alabama. There may be very good reasons for the delay, but there is also undoubtedly what Mr. Justice Holmes referred to in another context as a "hydraulic pressure" which is brought to bear upon any judge or group of judges and inclines them to grant last-minute stays in matters of this sort just because no mortal can be totally satisfied that within the extremely short period of time allowed by such a late filing he has fully grasped the contentions of the parties and correctly resolved them. To use the technique of a last-minute filing as a sort of insurance to get at least a temporary stay when an adequate application might have been presented earlier, is, in my opinion, a tactic unworthy of our profession. Such an explanation is not a condition of the granting of this or any further stay, but the absence of it will be taken into consideration by me.

The parties are required to file the foregoing submissions by 12 noon, e. s. t., on Tuesday, April 10, 1979. Unless otherwise ordered by me or by the Court, this stay shall expire at 5 p. m., e. s. t., on Friday, April 13, 1979.

The application for a stay is granted on the terms and conditions set forth in this opinion, and an order will issue accordingly.