Colin CLARK, Petitioner,

v.

Frank C. BLACKBURN, et al.,
Respondents.

Jean BEAVANS, Individually and as
Next Friend Acting on Behalf of
Colin Clark

v.

Ross MAGGIO, et al., Respondent, and the
Attorney General of the State of Louisi-
ana, William J. Guste, Jr., Additional
Respondent.

Civ. A. Nos. 81–262, 81–895.

United States District Court,
M. D. Louisiana,
Civil Division.

Oct. 29, 1981.

Statement of Reasons for Declining to
Issue Certificate of Probable Cause
for Appeal Oct. 30, 1981.

Terrance J. Powers, American Civil Lib-
erties Union of America, New Orleans, La.,
for plaintiffs.

Kay Kirkpatrick, John Sinquefield, Asst.
Dist. Attys., Patrick Quinlan, Asst. Atty.
Gen., Baton Rouge, La., for defendants.

JOHN V. PARKER, Chief Judge.

This application for a stay of execution of
a sentence of death was filed in the evening
hours of the last day of the grace period
provided for out-of-time appeals by Rule
4(a)(5) of the Fed.R.App.P. It brings to
mind the words of Justice Rehnquist in his
chambers opinion in *Evans v. Bennett,* 440
U.S. 1301, 99 S.Ct. 1481, 59 L.Ed.2d 756
(1979):

> "... There may be very good reasons
> for the delay, but there is also undoubted-
> ly what Mr. Justice Holmes referred to in
> another context as a 'hydrolic pressure'
> which is brought to bear upon any judge
> or group of judges and inclines them to
> grant last minute stays in matters of this
> sort just because no mortal can be totally
> satisfied that within the extremely short
> period of time allowed by such a late
> filing he has fully grasped the conten-
> tions of the parties and correctly resolve
> them." (99 S.Ct. at 1485).

In this case, the Court is fully familiar
with the entire background of these pro-
ceedings and the contentions of the parties
and concludes that no stay of execution is
justified.

The history of this case is set forth in
detail in this Court's prior opinion in *Clark
v. Louisiana State Penitentiary,* 520 F.Supp.

1046 (M.D.La.1981). Briefly, Clark was convicted in state court and sentenced to the death penalty by a jury. He exhausted state appeals and certiorari was declined by the Supreme Court of the United States. He thereafter exhausted state court post-trial remedies and on April 6, 1981, upon his petition for habeas corpus under 28 U.S.C. § 2254, this Court granted a stay of execution pending an evidentiary hearing into the serious allegations of constitutional deprivation upon which there had been no hearing in state court. This Court had several hearings and on August 26, 1981, concluded that there was no basis for a habeas corpus collateral attack upon Clark's state court conviction or sentence. On August 27, 1981, formal judgment was signed dismissing the petition for habeas corpus and continuing the previous stay of execution for an additional thirty days within which to appeal.

As pointed out in the opinion in the prior proceedings, 520 F.Supp. at 1049, after the entire matter had been tried and submitted on briefs which were filed with the Court, Clark wrote the Court personally requesting that he be permitted to discharge his counsel and that he be permitted to withdraw his petition. The Court declined to permit withdrawal of the petition but did permit him to discharge Mr. Richard Shapiro who was his retained counsel. The matter proceeded to judgment, as noted above.

Thereafter, as the record will show, Clark communicated with the Court, in writing, on several occasions, requesting that the stay of execution be lifted and stated that he had no desire to pursue his appellate remedies.

These consolidated proceedings present two groups of pleadings.

First in Number 81–262, Mrs. Jean Beavans, who alleges that she is Clark's mother, moves to intervene as Clark's "next friend", requests that the Court extend the time for filing a notice of appeal to the United States Court of Appeals for the Fifth Circuit and asks that the appeal be entered. The predicate for the motion is that Mr. Clark is not mentally competent to intelli-gently waive his right to pursue additional federal remedies.

In Number 81–262, which is an entirely new proceeding, Jean Beavans, again identified as Clark's mother, seeks to petition for a writ of habeas corpus under 28 U.S.C. § 2254, again claiming the status of Clark's "next friend." In these proceedings Ms. Beavans again alleges that her son is mentally incompetent to make the decision to forego further appeals, alleges that there were serious constitutional deficiencies in both his trial and sentence and alleges that by reason of his mental incompetency she ought to be permitted to raise these issues on his behalf.

In both proceedings a stay of execution is requested pending "clinical" psychiatric, psychological and other medical examination and evaluation of Clark.

■ While "next friend" petitions have been permitted in federal courts, it is clear that such an application may be entertained only if it is clearly demonstrated that the individual is himself unable to seek relief on his own behalf or is mentally incompetent to do so. *Gilmore v. Utah*, 429 U.S. 1012, 97 S.Ct., 436, 50 L.Ed.2d 632 (1976).

■ Clark's execution is presently scheduled for November 5, 1981. Oral argument was held on this matter on October 29, 1981, at which counsel for mover, counsel for the state authorities and Clark individually were present.

Ms. Beavans' justification for her "next friend" status as well as for psychiatric examination and evaluation of Clark is the same in both proceedings. She attaches her own affidavit in which she declares that Clark is her son who lived with her until he was nineteen but then he moved to Florida but that she has remained in frequent contact with him. She further declares that her son has a long history of being a self-destructive person, that he has a history of drug use; that he was hospitalized for drug related illnesses in 1970 at which time he was in a drug related coma that lasted almost three weeks; that he spent nine months in a reform school; but after his

release on Christmas Eve of 1971, Clark was obviously and deeply disturbed and that he was admitted into a psychiatric unit in Georgia for approximately three months at that time; that in 1973, Clark sought help for his drug and emotional problems at an institution in Florida but that he left after two weeks. She has nothing in her affidavit concerning Clark's whereabouts or activities between 1973 and 1978 but states that in 1978 he attempted to commit suicide at a time when he was under the influence of drugs; that Clark received psychiatric treatment following this incident in Mobile, Alabama for about two and a half months; that since Clark has been incarcerated, she has been in frequent contact through telephone, letters, and visits, and that these contacts have been very disturbing to her because although she realizes he is no longer on drugs she sees a "disturbed, irrational, strange, often bizarre, depressed and self-destructive person." She alleges "wildly fluctuating moods" that cause her to doubt his mental and emotional stability, that on occasion he goes from a happy mood to a sad mood and that he cries. She finally states that due to his long history of "self-destructive behavior and severe emotional and mental instability" she believes that his current decision to forego his legal appeals, he can not make a "competent and rational choice."

Along with the affidavit of Ms. Beavans, mover attaches the affidavit of one Michael Nelson, M.D. who declares that he is a staff member of the Harvard University Medical School and that he has an opinion "based on record review only", that Clark is "currently actively suicidal and that the action by which he has not taken advantage of or has actively dismissed legal remedies to safeguard his own life, is evidence of a continuing suicidal intention."

His entire affidavit is based upon an unspecified record review. During oral argument counsel specified that the "record" consisted of the affidavit of Ms. Beavans to which reference has been previously made. Dr. Nelson acknowledges that he has never seen Colin Clark, much less examined him.

At oral argument counsel was permitted to state what evidence he had to support his contention that Clark is presently mentally incompetent to handle his own affairs and to support his request for further examination and evaluation. He stated that these two affidavits, together with a tender of the testimony of a psychologist who had reviewed the affidavits but had never interviewed or examined Clark, consisted of the entire evidence he would wish to present upon an evidentiary hearing. The state requested and received permission to file into evidence copies of a video taped news conference which Clark recently conducted at the Louisiana State Penitentiary at Angola, Louisiana, at which he discussed in detail his decision not to pursue further legal remedies and his decision to submit to the carrying out of the death penalty.

It goes without saying that Ms. Beavans has no legal standing to interfere in her son's legal proceedings unless she can demonstrate that he is mentally incompetent and it also goes without saying that she must present substantial evidence indicating a need therefore in order to justify this Court in ordering Clark to undergo medical examination and evaluation at this time.

During oral argument on October 29th the Court explained the general nature of the pleadings which had been filed and the allegations contained in those proceedings. The Court inquired as to whether Clark wished the Court to appoint counsel for him in either case and he declined. He stated that he still adheres to his original decision to enter no appeal from this Court's judgment and to submit to execution. Clark stated to the Court:

"... What is happening is, Judge Parker, is just that my Mom is reacting like any other Mom would. I believe with all my heart she was coerced, manipulated, or whatever, by the A.C.L.U. to do this ... As late as yesterday, I sent word to her explaining what was happening, what was in the best interest of Colin Clark, be it her son or whatever, and her present not here today I believe it was a big misunderstanding, and I apologize to the

Court for my Mom and I apologize for myself for causing all of this."

Clark further stated, "My Mom is not hip to legal moves, and this, that, and the other, and those people that are against the death penalty are grasping for last straws. They don't want to see me electrocuted. So they are praying on my Mother's emotions, and right now, her son, as of a week from today will be electrocuted, and she is reacting, I guess, like any other Mom would."

Clark denied that anyone had put any pressure or in any manner forced him into the decision to seek no further appeals and he specifically denied any mental incompetence. The Court asked him whether he would be willing to submit to psychiatric examination voluntarily and his reaction was:

"I mean, Judge Parker, you just don't understand. To delay this thing now, to have a psychiatrist come in and say, okay, he's stable, I mean, you don't realize where my head is. I am now—I'm ready. And to keep, to keep going through this and through this is tearing me up. It's tearing up my family ... I object; not because I fear that they might find something out. I just object because I'm down to the last few days now, and no more, no more court moves. No more anything, you know."

This Court has been presented with no significant evidence indicating that Clark is not presently in control of his mental faculties and competent to make his own decisions. Obviously, a person who is on the verge of the death penalty will not react in the same manner as a human being who does not face that awful prospect. Clark, however, has clearly, rationally and without assistance articulated his position to this Court on several different occasions. I have seen no indication of mental incompetence at any hearing or in any communication that I have had with Clark and I am convinced that his decision to forego further appellate review was made knowingly and intelligently and that he fully understands the consequences of that decision. I am furthermore convinced that to the ex-

tent that any human being who is facing the death penalty, can be said to be mentally competent, Clark is mentally competent. See the chambers opinion of Mr. Justice Rehnquist in *Lenhard v. Wolf*, 443 U.S. 1306, 100 S.Ct. 3, 61 L.Ed.2d 885 (1979).

Accordingly, the application for stay of execution will be DENIED. The petition for a writ of habeas corpus will be DENIED. The motion to extend the time for entering an appeal will be DENIED and no motion for appeal will be entered.

Because of the necessity for this Court to act immediately, in order that the persons involved will have time to apply to higher courts for relief, these reasons may require smoothing out in the future and the Court may expand them.

Judgment will be signed accordingly.

## STATEMENT OF REASONS FOR DECLINING TO ISSUE CERTIFICATE OF PROBABLE CAUSE FOR APPEAL

This Court declines to issue a certificate of probable cause for appeal and declines the application for a stay of execution pending appeal. These remarks, together with the Court's opinion of yesterday, October 29, 1981, shall constitute a statement of the Court's reasons for declining to certify probable cause.

Two matters are here involved:

(1) Ms. Beavans as "next friend" requests an out-of-time appeal of this Court's judgment of August 27, 1981, denying habeas corpus relief to her son, Clark.

(2) Beavans, as "next friend" to Clark, attempts to institute a new petition for habeas corpus relief raising some of the old as well as some new constitutional objections to Clark's state court trial, conviction and sentence of death.

The execution date is now fixed for November 5, 1981. All these pleadings were filed late on October 26th; on October 29th, the Court heard oral argument on these matters and issued its written reasons for denying all relief sought by the "next friend" in both proceedings.

The threshold issue for "next friend" standing is that the party concerned must be incapable or incompetent to act for himself.

Until October 26, 1981, the filing of these proceedings, no suggestion that Clark was or is mentally incompetent has ever been made throughout his arrest, trial, appeal in state court, post-trial applications in state court and habeas corpus proceedings in this Court. In the proceedings in this Court Clark was represented by counsel of his own choosing until all evidentiary hearings were completed, post-trial briefs were filed and the case submitted. As noted in the original opinion denying habeas corpus relief, 520 F.Supp. at 1049, Clark was permitted then to discharge his attorney but not permitted to withdraw his petition. It was at that time that Clark made his determination to forego any additional attempts at post-conviction relief.

As noted in this Court's opinion of October 29, 1981, the only evidence or information submitted to the Court as indicating Clark's mental incapacity to handle his own affairs consisted of:

(1) An affidavit of Ms. Beavans, Clark's mother;

(2) An affidavit of Dr. Nelson, who has neither seen nor examined Clark; and

(3) The verbal tender by counsel of the testimony of an unidentified psychologist who has neither seen nor examined Clark.

In the opinion of October 29th, I eluded to but did not fully discuss the reasons why the affidavit of the mother is insufficient to constitute a minimum showing of Clark's *present* incompetence. The allegations of that affidavit are summarized in the opinion of October 29th and will not be repeated here.

The basic reason that the mother's affidavit is unimpressive is that, despite conclusionary declarations sprinkled throughout, there are no *factual allegations* upon which to predicate a likelihood of *present* mental incompetence. She does refer to hospitalization ten or eleven years ago and to an alleged suicide attempt in 1978, but she further acknowledges that her son is not under the influence of drugs at this time and, indeed, that he has not been since his arrest, nearly three years ago. Her reference to "irrational conduct" was explained at oral argument to be fluctuations in his mood from calm and happy to sad. These fluctuations in mood are alleged to be present at this time. Significantly, however, this is the only alleged "bizarre conduct" which is presently identifiable and attributed to Clark.

The simple answer to mood fluctuations in a man condemned to death is that it would be much more surprising if there were none. Simply declaring that Clark had mental problems in the past, even alleging that in the past, he attempted suicide, is not probative of his *present* ability to handle his own affairs. Mover has offered no specific *facts* or reliable expert medical opinion which indicates present mental incompetence. On the contrary, this Court's personal observation of and communication with Clark indicate that he has made an informed, rational and intelligent decision with full understanding of the consequences thereof. That decision is to forego further attempts at collateral attack upon his state court conviction and sentence. Moreover, I conclude, with Clark, that his mother is understandably desperate to take any action that would avert the terrible penalty which is about to be visited upon him.

The affidavit of the psychiatrist, Dr. Nelson, and the tendered testimony of the psychologist are quickly dismissed. Both are based exclusively upon the affidavit of the mother, without the benefit of viewing or examining Clark. They are thus hearsay and are entitled to no more weight than similar affidavits offered and described in the chambers opinion of Justice Rehnquist in *Evans v. Bennett*, 440 U.S. 1301, 99 S.Ct. 1481, 59 L.Ed.2d 756 (1979).

Petitioner, as "next friend" has simply not offered sufficient information casting doubt upon Clark's mental competency to allow her to intercede or even to require this Court to order a mental evaluation of

Clark. There is simply no justification for a mental examination where there is no significant evidence of present mental incompetence. As Justice Rehnquist pointed out in his opinion in *Evans v. Bennett,* supra, the mere fact that a person sentenced to death elects not to exhaust the last effort at post-conviction relief does not indicate mental incompetence.

The fact of the matter is that Clark does not have a very good chance for collateral attack upon his state court conviction and sentence. While hope springs eternal, it must be noted that his appeal was dismissed by the Supreme Court of Louisiana, that certiorari was denied by the Supreme Court of the United States, that the state courts denied post-conviction relief and that this Court, after full hearing, has denied his petition for federal habeas corpus.

This Court has previously granted Clark a stay of execution, issued only hours before the sentence was to be carried out on April 8, 1981. As Clark himself stated in his comments to the Court on October 29th, another stay of execution, followed by a determination of mental competence and a third execution date would "tear him up."

It is certainly not an irrational decision to forego the last throw of the dice, considering the odds against success and the mental trauma and anguish which will result from yet another delay and new date for execution. Clark has determined that he will not make the last throw. No cause has been shown to justify others making it for him.

Truly, the cruelest and most unusual of punishments is the scheduling of the execution, then staying the execution at the last moment, then rescheduling the execution and starting the process of stay and rescheduling all over. This Court will not be a part of that process and for these reasons declines to issue a certificate of probable cause for appeal or to grant an additional stay of execution.