Miriam **WILSON**, Nadine **Schnurstein**, Ronald **Barrow**, Gloria **Abbey–Lyles** and Patricia **Vader**, individually and as next friends acting on behalf of Charles Walker, Petitioners,

v.

Michael **LANE**, Director of the Illinois Department of Corrections, Respondent.

No. 88–3180.

United States District Court, S.D. Illinois.

April 19, 1988.

Jon K. Stromsta & Kurt H. Feuer, Ross & Hardies, Monica Rimai, Sidley & Austin, Chicago, Ill., for petitioners.

Kenneth A. Fedinets, & Terence Madsen, Asst. Attys. Gen., Chicago, Ill., for respondent.

## MEMORANDUM AND ORDER

STIEHL, District Judge:

### INTRODUCTION

This case is before the Court on a petition for a writ of habeas corpus. Petitioners, Miriam Wilson, Nadine Schnurstein, Ronald Barrow, Gloria Abbey–Lyles and Patricia Vader, bring this action individually, and as next-friends acting on behalf of Charles Walker, an Illinois death row inmate who is scheduled for execution by lethal injection on May 10, 1988.

This Court issued an Order requiring the petitioners to supplement their pleadings as to the issues of jurisdiction, standing and Walker's competency. The Court heard oral argument on those issues and took the matter under advisement to determine whether the petitioners have standing to bring this action. Walker has not joined in the petition, and in a letter to the Court has stated that he does not wish to have anyone acting on his behalf.[1]

Charles Walker pleaded guilty to two counts of murder and one count of armed robbery in the Circuit Court for St. Clair County, Illinois. He requested that a jury be impaneled to determine whether he should receive the death penalty. After hearing evidence, the jury recommended the death penalty be imposed. *People v. Walker*, 109 Ill.2d 484, 94 Ill.Dec. 530, 532–35, 488 N.E.2d 529, 531–34 (1985). Walker received a sentence of death on each of the murder counts and thirty years on the armed robbery count. The Illinois Supreme Court confirmed the conviction and the death sentence on December 20, 1985.

On December 27, 1985, Walker made a motion to terminate further proceedings. On February 6, 1986, the Illinois Supreme Court denied Walker's motion to terminate further proceedings, and denied Walker's appointed counsel's petition for rehearing.

Walker's counsel subsequently filed a petition for writ of certiorari in the United States Supreme Court. Walker continued to oppose the action and refused to sign an affidavit in support of the motion to proceed in forma pauperis in his petition for writ of certiorari. Certiorari was denied by the Supreme Court on December 1, 1986. *Walker v. Illinois*, 479 U.S. 995, 107 S.Ct. 598, 93 L.Ed.2d 598 (1986), *reh'g denied*, 479 U.S. 1047, 107 S.Ct. 913, 93 L.Ed.2d 862 (1987).

On February 19, 1987, the Illinois Supreme Court, in response to a request, remanded the case to the Circuit Court of St. Clair County for a hearing to "determine whether Charles Walker (1) is mentally competent to waive further legal actions on his behalf; (2) has made a knowing and intelligent waiver of any such further legal actions; and (3) is fit to be executed." Counsel was appointed to represent Walk-

---

1. The text of Walker's letter dated April 6, 1988 to the Court is as follows:

Dear Sir:

In regards to the Habeas Corpus filed in my case (Cause No. 88–3180).

This is to affirm that I dont want any one speaking or acting on my behalf. Before I was sentenced I had told my sister that if I was sentenced to death, that one appeal had to be filed according to law but after that I was going to stop my appeals and ask for an execution date. the conditions on death row or anyplace else has nothing to do with my decision. The people who signed that writ has only known me the short time I've been here.

Respectfully yours.
S/ Charles T. Walker
Box 711 # 76374
Menard Ill 62259

er, and a hearing was held on June 24, 1987.

On September 28, 1987, the Illinois Supreme Court, having found the June 24 hearing to be inadequate, issued an order requiring a rehearing in the Circuit Court of St. Clair County. The court instructed:

> The rehearing shall be in accordance with *Rees v. Peyton* (1966), 384 U.S. 312, [86 S.Ct. 1505, 16 L.Ed.2d 583], and *Gilmore v. Utah* (1976), 429 U.S. 1012 [97 S.Ct. 436, 50 L.Ed.2d 632]. ... The circuit court is further directed to consider all available evidence relevant to the court's findings of fact concerning the three questions raised for consideration.

The hearing was held in compliance with the Illinois Supreme Court's Order on November 20, 1987, and the St. Clair County Circuit Court made the following findings:

1. Defendant is aware of the legal recourse available to him in attacking his conviction and death sentence, including state post-conviction relief [*Ill.Rev.Stat.*, 1985, ch. 38, sec. 122–1 *et seq.*], federal habeas corpus relief (28 U.S.C. 2254 *et seq.*] and executive clemency;

2. Defendant is mentally competent to seek legal relief on his own behalf from the judgment imposed against him;

3. Defendant has mental capacity to make a rational choice concerning the continuation or abandonment of further litigation attacking his conviction and sentence [*Rees v. Payton*, 384 U.S. 312, 314, 86 S.Ct. 1505, 1506, 16 L.Ed.2d 583 (1966)];

4. Defendant does not suffer from any physical condition which impairs his mental capacity to waive further proceedings;

5. Defendant does not suffer from terminal lung disease;

6. Defendant does not choose to be executed because he fears other inmates;

7. Defendant has made a knowing and intelligent waiver of further legal action on his behalf [*Johnson v. Zerbst*, 304 U.S. 458, 467–468, 58 S.Ct. 1019, 1024–1025, 82 L.Ed. 1461 (1938)];

8. Defendant has made a knowing and intelligent waiver of counsel for the purpose of further proceedings challenging the judgment against him [*Johnson v. Zerbst*, 304 U.S. 458, 467–468, 58 S.Ct. 1019, 1024–1025, 82 L.Ed. 1461 (1938)];

9. Defendant understands the nature and purpose of the death sentence to be imposed against him [*Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 2603, 91 L.Ed.2d 335 (1986); *Ill.Rev. Stat.*, 1985, ch. 38, sec. 1005–2–3];

10. Defendant understands that the State intends to execute him by lethal injection as punishment for the crime of murder [*Ill.Rev.Stat.* 1985, ch. 38, sec. 119–5];

11. Defendant is fit to be executed.

(Hudlin, J. Order of Nov. 20, 1987, as cited in Respondent's Reply Brief at pp. 8–9.)

On January 19, 1988, the Illinois Supreme Court, upon review of the record, found "that Charles Walker is mentally competent to waive further legal actions on his behalf; has made a knowing and intelligent waiver of any such further legal actions; and is fit to be executed." The court ordered that the death sentence be implemented on May 10, 1988.

## JURISDICTION AND VENUE

Petitioners allege jurisdiction pursuant to 28 U.S.C. §§ 1343(c) and 2241. They describe the petition as consisting of two claims. In one claim, petitioners sue individually. In the other, they sue on behalf of Charles Walker as his next-friend, pursuant to 28 U.S.C. § 2242. (Application for writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by *someone acting in his behalf.*" *Id.* (emphasis added)).

 This Court's habeas corpus jurisdiction extends only to actions brought by or on behalf of a person in custody; the next-friend claim may therefore come within such jurisdiction. In a next-friend action, the next-friend sues on behalf of the person in custody, who remains the real party in interest. Fed.R.Civ.P. 17. Venue over the next-friend claim properly lies in this Court because Walker was convicted in

this judicial district and presently is incarcerated within the district. 28 U.S.C. § 2241(d).

▮ Petitioners also sue in their individual capacities, thereby asserting their own interests rather than Walker's. Presumably, they intend for Walker to benefit from this assertion of their own interests. This Court's habeas corpus jurisdiction does not extend to such individual claims. A federal court has jurisdiction to hear a habeas corpus action only if it is brought by or on behalf of a person in custody to attack the legality of his confinement. 28 U.S.C. §§ 2241, 2242; the individual claims here are brought neither by Walker nor on his behalf. Petitioners also invoke this Court's jurisdiction pursuant to 28 U.S.C. § 1343(a)(3), which would extend to petitioners' individual claims, but only to the extent that petitioners have standing to raise the claims in a civil rights action under 42 U.S.C. § 1983, for which § 1343(a)(3) is the jurisdictional counterpart. Petitioners' individual claims, therefore, must be pursued under the Civil Rights Act of 1871, 42 U.S.C. § 1983, if at all. Venue over such civil rights claims is properly in this Court, because the claims arose in this district. 28 U.S.C. § 1391(b).

## EXHAUSTION OF STATE JUDICIAL REMEDIES

A federal court will not entertain a petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court unless all effective available state judicial remedies have been exhausted. 28 U.S.C. § 2254(b), (c). Remedies must be exhausted as to every claim raised, *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), and the substance of each federal claim must be "fairly presented" as a federal claim in state court. *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982). The United States Supreme Court held in *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), that repetitious applications to state courts are not necessary, and that remedies are properly exhausted by raising all claims on direct review to the highest state court. *Id.* at 447, 449 n. 3, 73 S.Ct. at 402, 403 n. 3. The Court has reviewed the published opinion and unpublished orders of the Illinois Supreme Court in this case, and concludes that all of the claims in this habeas action were presented to that court, and accordingly, the exhaustion requirements of 28 U.S.C. § 2254(b), (c) have been met.

## STANDING

This action is concerned with Charles Walker's capital sentence for murder, i.e. whether it was imposed, and may be executed, constitutionally. At oral argument, petitioners made clear that they do not seek to attack the Illinois death penalty on any grounds independent of its imposition on Walker, although several petitioners may be affected by the law in other ways.

This Court is initially faced with the question of whether petitioners have standing, i.e., whether they are "entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). Standing has two aspects. *Singleton v. Wulff,* 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976). The first question is jurisdictional. Article III of the Constitution limits the jurisdiction of federal courts to "cases" or "controversies." "The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the Court's judgment may benefit others collaterally." *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205. Second, to find standing, the Court must also determine whether "as a prudential matter," the petitioners "are proper proponents of the particular legal rights on which they base their suit." *Singleton,* 428 U.S. at 112, 96 S.Ct. at 2873. Prudential considerations will require that litigants "generally must assert [their] own legal rights and interests, and cannot rest [their] claim to relief on the legal rights and interests of third parties." *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205. Moreover, litigants do not have standing when the asserted injury "is a 'generalized grievance' shared in substan-

tially equal measure by all or a large class of citizens." *Id.* These prudential considerations relate to the well-established judicial preference to avoid unnecessary constitutional adjudication. *Singleton v. Wulff,* 428 U.S. at 124, 96 S.Ct. at 2879 (Powell, J., concurring in part and dissenting in part); *Ashwander v. TVA,* 297 U.S. 288, 346–48, 56 S.Ct. 466, 482–84, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). When these prudential requirements do not apply, a court may allow a litigant to assert the rights of third parties. *Singleton,* 428 U.S. at 114, 96 S.Ct. at 2874.

Three different theories of standing are suggested by petitioners' pleadings. First, they allege injury-in-fact in that Walker's execution will deprive him of their interest in continuing their friendship and association with him. Accordingly, they claim individual standing to assert Walker's rights in pursuit of their own interests (Jus Tertii standing). Second, they invoke the public interest in not letting Illinois execute a person in violation of the constitution (Citizen standing). Finally, they sue as Walker's next-friends claiming that he is unable to sue in his own behalf (Next-friend standing).

## A. JUS TERTII STANDING

 Petitioners claim individual standing to raise the issue of the constitutionality of Charles Walker's capital sentence. Courts will find standing to assert the rights of a third party (jus tertii) when the injury-in-fact requirement of Art. III is met, and the justifications for the prudential policy of requiring a party to assert his own rights are absent. *Singleton,* 428 U.S. at 114, 96 S.Ct. at 2874. In particular, the party in court and the third party must have a sufficiently close relationship so that "the enjoyment of the [third party's] right is inextricably bound up with the activity the litigant wishes to pursue." *Id.* The relationship must be such that the litigant will be nearly as effective as the third party in asserting the latter's rights. Finally,

> Even where the relationship is close, the reasons for requiring persons to assert their own rights will generally still apply.

If there is some genuine obstacle to such assertion, however, the third party's absence from the court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by default the right's best proponent.

*Id.* at 116, 96 S.Ct. at 2875.

Petitioners claim that execution of Walker's sentence will injure them by destroying their relationship with him. Each of the petitioners has befriended Walker only since he came to "Death Row" at Menard. (In response to the Court's request, petitioners submitted individual affidavits detailing the length, nature and extent of their relationship with Walker. None of them had met him until he was placed on Menard's death row. Sr. Miriam Wilson is a member of the Illinois Coalition Against the Death Penalty (ICADP), and met Walker through her visits to Menard in that capacity. She has visited Walker bi-monthly for 30 minutes per visit, and corresponds with him once or twice a month and has received crocheted gifts from him. Nadine Schnurstein met Walker eighteen months ago through another prisoner, and has visited with Walker on four occasions. She corresponds with him four or five times a week, and speaks with him telephonically weekly. She has received crocheted gifts from Walker, and delivered gifts for him to his mother. Ronald Barrow is a fellow inmate on death row at Menard, and has known Walker since 1985. They communicate through occasional conversations, and notes passed through guards. He has purchased some of Walker's crocheted items as gifts. Gloria Abbey–Lyles is the wife of another death row inmate, and through this relationship has known Walker for three years. She visited Walker and corresponded with him monthly until Walker stopped communicating with her when she began taking an active part in trying to stop his execution. Patricia Vader is a director of ICADP, and as such visits death row inmates, and through this activity met Walker while interning with ICADP. She visits Walker every other month for twenty minutes, and they occasionally speak on the

telephone. They exchange Christmas and birthday greetings.) Each petitioner states that he or she cares for Walker as a friend, and would miss him if he were executed.

The Court is not aware of any authority to support the notion that lost friendship constitutes an injury sufficient to meet the requirements of Art. III. Some associational interests are protected by the Constitution, but these usually involve either familial relations or associations in pursuit of a First Amendment right. *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 3249–50, 82 L.Ed.2d 462 (1984) (discussing "intimate association" and "expressive association." *Id.* at 618, 104 S.Ct. at 3249). The Court finds that the threat of lost friendship in this case is insufficient to support the finding of an injury-in-fact required for individual standing.

Moreover, the prudential limitations on jus tertii standing apply to this case. To find standing, the Court must determine whether "the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue" and "the relationship between the litigant and third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." *Singleton*, 428 U.S. at 115, 96 S.Ct. at 2874. Thus a physician may, in an action to protect his ability to perform abortions, assert the rights of his patients to have abortions. *Id.* A licensed beer vendor, who has lost the business of male customers between the ages of 18 and 20, may claim that the law discriminates invidiously against those young men by illegalizing their purchase of beer from him. *Craig v. Boren*, 429 U.S. 190, 192–97, 97 S.Ct. 451, 454–57, 50 L.Ed.2d 397 (1976). So, too, may a professional fund raiser, who will lose the business of charities whose expenditures for fund raising have been limited, assert the unconstitutionality of the limitation as a violation of the client charities' First Amendment rights. *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 954–59, 104 S.Ct. 2839, 2845–48, 81 L.Ed.2d 786 (1984). ("Munson's interests in challenging the statute are consistent with the ... interests of the charities it represents." *Id.*)

The relationship between petitioners and Walker, however close, fails to satisfy the prudential requirement that Walker should assert his own rights. While the rights petitioners assert on behalf of Walker implicate his interests under the Fifth, Sixth, Eighth and Fourteenth Amendments, none of these interests is affected by the threatened loss of friendship. Therefore, the inextricable link is missing.

Nor is it clear that petitioners would assert rights consistent with Walker's. Walker chooses not to attack his sentence. That choice is his to make unless he has been rendered incapable of acting in his own interests, in which case, petitioners may act as his next-friend, as discussed later in this opinion. If Walker is before the Court through a next-friend, it is unnecessary and inappropriate for anyone to assert his rights as jus tertii. *See, Smith v. Organization of Foster Families*, 431 U.S. 816, 841 n. 44, 97 S.Ct. 2094, 2108 n. 44, 53 L.Ed.2d 14 (1977) ("Ordinarily, ... a party would not have standing to assert the rights of another, himself a party in the litigation; the third party himself can decide how best to protect his interests." *Id.*).

Finally, the last requirement for allowing jus tertii standing is absent: some "genuine obstacle" to the third party's assertion of his own rights. An obstacle that impairs the third party's decision making would make next-friend standing appropriate. Short of such an extreme impairment, the Court finds no obstacle to Walker's assertion of his own rights. Walker has written to the Court, stating that he opposes these proceedings. He could just as easily have ratified the petition if that were his choice. Considerations of privacy, *Singleton v. Wulff*, 428 U.S. at 117, 96 S.Ct. at 2873; *Eisenstadt v. Baird*, 405 U.S. 438, 446, 92 S.Ct. 1029, 1034, 31 L.Ed.2d 349 (1972); *NAACP v. Alabama*, 357 U.S. 449, 459, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958); imminent mootness, *Singleton*, 428 U.S. at 117, 96 S.Ct. at 2875; fear of prosecution, *Craig v. Boren*, 429 U.S. at 196–97,

97 S.Ct. at 456–57; *Eisenstadt* at 446, 92 S.Ct. at 1034; or "chilled" expression, *Munson,* 467 U.S. at 956, 104 S.Ct. at 2846, do not apply here. No obstacle bars Walker from pursuing his post-conviction remedies, unless his choice to forgo those remedies arises from some incapacity. "The Art. III aspect of standing also reflects a due regard for the autonomy of those persons likely to be most directly affected by a judicial order. The federal courts have abjured appeals to their authority which would convert the judicial process into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982). (Citations omitted). If Walker has competently chosen not to assert his rights, then petitioners have no standing to assert them for him. *Gilmore v. Utah,* 429 U.S. 1012, 1014, 97 S.Ct. 436, 437, 50 L.Ed.2d 632 (1976) (Burger, C.J., concurring).

## B. CITIZEN STANDING

■ Petitioners also allege that the "public and judicial interests in preventing the execution of an individual pursuant to an unconstitutional statute weigh heavily in favor of allowing petitioners to challenge the Illinois death penalty statute on Mr. Walker's behalf." Their position is that even if Walker does not want to pursue his federal habeas corpus remedy, his decision to "waive" that right should not prevent the Court from hearing a matter involving public interests of the highest degree. Such rights, they claim, are not waivable, and therefore this Court should follow a number of state court decisions and hear this case whether or not Walker joins in the petition.

Petitioners may be correct in stating that a number of state courts have refused to accept a defendant's waiver of appellate remedies in capital cases under a variety of circumstances, but their arguments ignore the critical differences between those courts and this Court. First, this is a federal court, with its jurisdiction limited by the case or controversy requirement of Art.

III and the necessity of an injury-in-fact to the litigant who claims standing. Second, this Court has no appellate jurisdiction over the Illinois courts, which have already heard this case. The scope of review on appeal differs from that in a habeas action, *see, e.g., Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), and a federal habeas court has no supervisory jurisdiction over the state courts. Finally, there is nothing to stop Walker from bringing these claims to this Court's attention on his own behalf. This case differs from cases where a condemned prisoner, properly before a court, suddenly withdraws his appeal or seeks to waive a mandatory state appeal. Compare *Hammett v. Texas,* 448 U.S. 725, 100 S.Ct. 2905, 65 L.Ed.2d 1086 (1980), with *Rees v. Peyton,* 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966).

■ Petitioners, in asserting the public interest, even without an injury to themselves, essentially seek "citizen standing." Because of the public interest and the purported non-waivable nature of the habeas remedy, they assert that "it is entirely appropriate for the petitioners to have standing before this court." In *Valley Forge,* the Supreme Court considered an argument that circumstances demanded "special exceptions from the requirement that a plaintiff allege 'distinct and palpable injury to himself that is likely to be redressed if the requested relief is granted.'" 454 U.S. at 488, 102 S.Ct. at 767 (citations omitted). The Court responded that such an argument carried an implicit

> philosophy that the business of the federal courts is correcting constitutional errors, and that "cases and controversies" are at best merely convenient vehicles for doing so and at worst nuisances that may be dispensed with when they become obstacles to that transcendent endeavor. This philosophy has no place in our constitutional scheme ... "the assumption that if respondents have no standing to sue, no one has standing, is not a reason to find standing." This view would convert standing into a requirement that must be observed only when satisfied.

*Id.* at 489, 102 S.Ct. at 767 (citations omitted). The Court rejected the notion that "judicial power requires nothing more for its invocation than important issues and able litigants." *Id.* If Walker is unable to think and decide for himself, then others may assert his interests as next-friend. But if he is competent, Walker retains his autonomy and remains the best and only champion of his rights. The mere importance of the issues· does not confer on this Court any authority to set aside a state court sentence without the presence of the only party whose rights are implicated by the execution of that sentence.

Accordingly, the Court finds that petitioners have no standing as individuals to attack the legality of Walker's capital sentence in this Court.[2]

## C. NEXT–FRIEND STANDING

As a second basis for standing, petitioners bring this habeas action as "next-friends" of Charles Walker.

■ 28 U.S.C. § 2242 provides that: "Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended *or by someone acting in his behalf.*" (Emphasis added). The next-friend device is infrequently used, but, under certain conditions may be useful, or even necessary. *United States ex rel. Toth v. Quarles,* 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955) *cited in Weber v. Garza,* 570 F.2d 511, 513 (5th Cir.1978). The restrictions on next-friend filings are many. The next-friend may not file if the detainee, himself, could file a petition. *Weber, id.* The number of cases which concern next-friend filing in death penalty cases are few.[3] The law that has

developed from these cases has recognized that two inquiries must be made before a next-friend petition can be entertained, that is, before the parties have standing to bring the action.

■ The next-friend applicant must, in the petition, satisfy the following requirements. First, there must be an explanation showing "(1) why the detained person did not sign and verify the petition and (2) the relationship and interest of the would be 'next-friend.'" *Weber,* 570 F.2d at 513–14. Second, the applicants may not use the next-friend device for the unauthorized practice of law. "The 'next-friend' expedient, which on occasion may be essential to the efficacy of the 'Great Writ,' may not be so abused as to unleash on the courts a quasi-professional group of lay writers who seek to right all wrongs, both real and imagined." *Id.* at 514. Without the required showing for the need to "resort to the next-friend device, the court is without jurisdiction to consider the petition." *Id.*

Because of the "obviously irreversible nature of the death penalty," this Court will resolve all doubts as to legal issues in favor of granting a stay; however, there must be authority for the Court to so act. *Evans v. Bennett,* 440 U.S. 1301, 1303–4, 1306, 99 S.Ct. 1481, 1482–3, 1484, 59 L.Ed.2d 756 (1978) (Rehnquist, J. Opinion in Chambers). Moreover, the Court is also guided by District Court Rules for the Disposition of Petitions for Habeas Corpus Brought Pursuant to 28 U.S.C. § 2254 in Cases Involving Petitioners Under a Sentence of Death, promulgated by the Seventh Circuit.

---

**2.** In making this determination, the Court expresses no opinion as to whether petitioners, in their individual capacities, have stated a claim upon which relief could be granted under the Civil Rights Act of 1871, 42 U.S.C. § 1983, or pursuant to any other legal theory.

**3.** *See, e.g., Rees v. Peyton,* 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966); *Evans v. Bennett,* 440 U.S. 1301, 99 S.Ct. 1481, 59 L.Ed.2d 756 (April 5, 1979) (Rehnquist, J., Opinion in Chambers); *Lenhard v. Wolff,* 603 F.2d 91 (9th Cir. 1979), on applications for stay of execution, 443 U.S. 1306 (Sept. 7, 1979) (Rehnquist, J., Opinion

in Chambers), 444 U.S. 807 (October 1, 1979) (Marshall, J. and Brennan, J., dissenting); *Groseclose v. Dutton,* 589 F.Supp. 362, 594 F.Supp. 949 (M.D.Tenn.1984); *Rumbaugh v. Estelle,* 558 F.Supp. 651 (N.D.Tex.1983); *Rumbaugh v. McKaskle,* 730 F.2d 291 (5th Cir.1984); *Rumbaugh v. Procunier,* 753 F.2d 395 (5th Cir.), *cert. denied,* 473 U.S. 919, 105 S.Ct. 3544, 87 L.Ed.2d 668 (1985) (Marshall, J. and Brennan, J., dissenting); *Smith v. Armontrout,* 632 F.Supp. 503 (W.D.Mo.1986), *aff'd* 812 F.2d 1050 (8th Cir. 1987).

Applying the standards of the next-friend test to this case, the first prong of the initial requirement is to determine if the petitioners have adequately addressed the question "why the detained person did not sign and verify the petition...." *Weber*, 570 F.2d at 513.

In their original petition, and supplement thereto, the petitioners assert next-friend standing by claiming that the conditions of Walker's confinement on death row "have impeded and violated Mr. Walker's ability to freely and voluntarily exercise his constitutional rights, including his right to pursue state post-conviction and federal habeas corpus remedies." (Next-friend petition at para. 11, pp. 6–7.)

The Supreme Court, in *Rees v. Peyton*, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), set forth the standard to be used by a reviewing court to determine whether the person has the mental capacity to choose not to pursue further appeals and collateral attacks upon his conviction and sentencing. The standard is:

> [W]hether he has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises.

*Id.* at 314, 86 S.Ct. at 1506. Therefore, the sole determination is whether Walker has the capacity to make a rational choice in his decision to forego further review of his sentence. If his capacity is challenged, it must be, under the terms of *Rees*, challenged by a showing that Walker suffers from a "mental disease, disorder or defect." *Id.* Following the analysis of *Rees*, this Court will discuss the issue in terms of Walker's "capacity," although other courts have used the term "competency" in their reviews.

As Justice Rehnquist stated in the case concerning Jesse Bishop, *Lenhard v. Wolff*, 443 U.S. 1306, 1308, 100 S.Ct. 3, 4, 61 L.Ed.2d 885 (Sept. 7, 1979) (Opinion in Chambers); "A successful attack on Bishop's competency is the requisite threshold for applicants' [next-friend] standing." This Court will, therefore, limit its review on the question of standing of these next-friends in the same manner. "[T]he initial barrier to be overcome in the present case by [the next-friend] applicants ... is the finding of the courts which have passed on the question that defendant ... is competent to waive the assertion of any constitutional infirmities in the sentence imposed upon him...." *Id.*

The Court, therefore, rejects petitioners' assertions of next-friend standing to the extent that they rely upon the second test set out in *Smith v. Armontrout*, 812 F.2d 1050 (8th Cir.1987) adopted from the analysis in *Groseclose v. Dutton*, 594 F.Supp. 949 (M.D.Tenn.1984). The Eighth Circuit in *Smith v. Armontrout* created an artificial second avenue for determining next-friend standing. In its analysis of the issue of the defendant's decision to forego further review, the court stated:

> This inquiry resolved into two questions: first, whether Smith had the capacity to appreciate his position and make a rational decision, or was suffering from a mental disease, disorder, or defect that substantially affected his capacity, *see Rees v. Payton*, 384 U.S. at 314, 86 S.Ct. at 1506; and second, whether the conditions of his confinement rendered his decision involuntary. *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Groseclose ex rel. Harries v. Dutton*, 594 F.Supp. 949, 953, 957, 961 (M.D.Tenn.1984).

812 F.2d at 1053.

In *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), to which the Eighth Circuit attributes the "second" inquiry, the Court stated:

> It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights." A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to

counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

*Id.* at 464, 58 S.Ct. at 1019. *Johnson* concerned a criminal defendant's waiver of the right to counsel, not the waiver of the right to appeal or to collateral review in a death sentence case. In *Johnson* the petitioner was the inmate himself, not a next-friend. Nonetheless, the focus of *Johnson* falls squarely within the *Rees* decision. That is, whether the abandonment of further legal review was made intelligently, with full capacity.

It should be further noted that in both *Smith v. Armontrout* and *Groseclose*, the reviewing courts have based their inquiry into the defendants' lack of capacity on the "disease, disorder or defect" standard articulated in *Rees,* and were not limited to a "conditions of confinement" analysis. In *Smith v. Armontrout,* Gerald Smith was found to suffer from three conditions (borderline personality disorder; antisocial personality disorder; chronic mild-to-moderate depression) that were "mental disorders." 812 F.2d at 1055. In *Groseclose,* Ronald Harries was found to suffer from bipolar mood disorder, or "manic depressive illness." 594 F.Supp. at 954. The Court also found that his judgment may have been impaired by his medication. 589 F.Supp. at 366.

The second inquiry of *Smith v. Armontrout,* to the extent that it may actually be a part of the capacity question, falls within the standards which the Supreme Court recognized in *Rees.* That is, was the defendant's decision to abandon further review made voluntarily. Again, the threshold for standing as next-friends is a successful attack on the capacity to make a voluntary decision. The issue of Walker's alleged incapacity, the cause of which may be the result of various factors, is the sole focus of this Court. And, therefore, the conditions of confinement are not before the Court. Consequently, the examination by this Court into the issue of standing will be directed only to Walker's mental state, not the specific cause thereof.

The petitioners have stated, both at oral argument, and in their pleadings, that they are not challenging Walker's "competence" nor arguing that his decision to abandon further legal review was not rational. It is clear to the Court that these assertions are made based on the petitioners' misplaced reliance on *Smith v. Armontrout.*

Despite these assertions, it is evident that they concede the question of "competence" to the extent that they do not assert that Walker suffers from a mental disease or defect. Petitioners, in their pleadings, limit their argument to the claim that Walker's decision to abandon his rights to further review demonstrates a flawed mental state resulting from an "overborne will." The issue of flawed mental state or overborne will is properly addressed under the capacity test set forth in *Rees.* The only remaining inquiry is whether the state court hearings addressed Walker's capacity in light of the overborne will allegation.

28 U.S.C. § 2254(d) provides:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

. . . . .

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding;....

The Court finds that the hearing held in the Circuit Court, St. Clair County, Illinois, on November 20, 1987, was insufficient to the extent that it did not address the issue of whether Walker suffered from a flawed mental state due to an overborne will. In all other respects, the state court determinations as to Walker's capacity were sufficient. Therefore, the sole issue before the Court is whether Walker suffers from an overborne will which substantially affects his capacity, thereby rendering his decision to abandon further relief involuntary.

Accordingly, the Court ORDERS that the execution of Charles T. Walker be and it hereby is STAYED pending an evidentiary hearing on the jurisdiction of this Court based on the issue of whether Walker suffers from an overborne will which substantially affects his capacity, thereby rendering his decision to abandon further relief involuntary.

To facilitate this inquiry, the Court intends to order a psychiatric/psychological evaluation of Walker by an expert appointed by the Court. Each party shall submit to the Court within seven days of this date a statement of the specific tests it wishes to have administered within the parameters of the Court's inquiry. Each party shall also have the opportunity to have its own psychiatrist or psychologist examine Walker. Each party shall provide to the Court, and opposing counsel, the curriculum vitae of its expert within seven (7) days. Discovery of the opposing expert shall be permitted upon proper application to the Court. Reports of the experts shall be filed within forty-five (45) days. A hearing will be scheduled after the Court has had an opportunity to review the reports of the examining experts.

The Clerk of the Court is directed to forward a copy of this Order to Walker.

IT IS SO ORDERED.