# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40554

United States Court of Appeals
Fifth Circuit

**FILED**

April 24, 2015

In re:  ROBERT LYNN PRUETT,

Lyle W. Cayce
Clerk

Movant

On Motion for Authorization to File
Successive Petition for Writ of Habeas
Corpus in the United States District Court
For the Southern District of Texas, Corpus Christi

Before STEWART, Chief Judge, and JOLLY and SMITH, Circuit Judges.

PER CURIAM:*

Robert Lynn Pruett was sentenced to death for capital murder in Texas in 2002 and is scheduled to be executed on April 28, 2015.  On April 23, he moved for this authorization to file a successive federal habeas petition to raise two claims:

(1) In view of recently discovered evidence, as well as the discovery of evidence that should have been revealed to his trial counsel under *Brady v. Maryland*, 373 U.S. 83 (1963), no reasonable juror would have voted to convict Pruett of capital murder.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40554

(2) Recently discovered evidence, which was wrongfully withheld from his trial counsel in violation of *Brady v. Maryland*, further buttresses the proposition that, in view of the totality of the evidence, no reasonable juror would have voted to convict him of capital murder.

He further asserts that his application is based on the Eighth Amendment, which bars his execution because he is actually innocent of capital murder, and a violation of his Fourteenth Amendment right to due process, because the State (1) failed to disclose deals made with inmates who testified against him, (2) failed to correct false testimony given by one of those inmates, (3) failed to disclose it had threatened with retaliation inmates who wished to testify for him, and (4) failed to preserve physical evidence which could demonstrate his innocence.

A brief description of the evidence and procedural history, for context, follows.

Pruett was convicted and sentenced to death for the murder of Texas Department of Criminal Justice Correctional Officer Daniel Nagle, which he committed while serving a life sentence for a prior murder. Nagle was stabbed with a shank made of a metal rod sharpened to a point at one end, and wrapped in tape at the other end. The State argued that Pruett's motive for the murder was that he was upset because Officer Nagle had written a disciplinary report for Pruett's having food in an area of the prison where food was not permitted. The shank and torn pieces of the disciplinary report were found near Officer Nagle's body after the murder. Blood found on the torn disciplinary report was tested for DNA and found to have come from Officer Nagle. There was no physical evidence connecting Pruett to the murder. The evidence against him consisted largely of testimony from inmates. We described that evidence in our opinion affirming the denial of Pruett's first federal habeas petition as follows:

2

No. 15-40554

Inmates Allen Thompson and Johnny Barnett testified that they were in the multi-purpose room and saw and heard Pruett attacking Nagle. Inmate Anthony Casey testified that he heard Pruett talking about a weapon with another inmate before the attack. Casey, through a recreation yard window, later saw Pruett near Nagle's desk, and then saw Pruett remove his clothing in a hallway and push it through a gas port into the recreation yard. Inmates James Dale Keller, Robert Michael Lewis, and Jimmy Mullican testified that they witnessed Pruett's attack on Nagle from the craft shop across from the multi-purpose room. Inmate Harold Mitchell testified that he was in the multi-purpose room before the attack. He said that Pruett came into the room and suggested that he leave because Pruett was going to "do something." When Mitchell questioned Pruett, Pruett said that he was going to kill Nagle. According to Mitchell, Pruett said that he was tired of life in prison and wasn't going to kill himself, but didn't have a problem making the State do it for him.

*Pruett v. Thaler*, 455 F. App'x 478, 480 (5th Cir. 2011).

Inmate Mullican also testified that, at the request of Pruett's cellmate, Shelton Phillips, Mullican gave some tape to Pruett. The day after the murder, two rolls of tape were collected from Phillips's workstation in the craft shop. An expert witness for the State, Lisa Harmon Baylor, testified that based on her analysis, one of the rolls of tape removed from Phillips's workstation was the source of the tape that was wrapped around the shank.

Pruett maintains that others at the prison might have had a motive for wanting Nagle dead because there was a drug smuggling and money laundering operation at the prison, Nagle was aware of it, and was in the process of writing a grievance about it when he was murdered. He asserts that the indictment of three correctional officers for laundering drug money for inmates increased the plausibility that he had been framed for the murder. Pruett testified at trial that he watched Officer Nagle tear up the report. However, his proposed successive petition alleges that he believed "that someone else tore up the pieces of the disciplinary report in an attempt to

3

frame him for the murder of Officer Daniel Nagle and that the person who tore up the disciplinary report and killed Officer Nagle might have left a sufficient amount of epithelial cells on the report to allow for the creation of a DNA profile that would aid in identifying the actual murderer." Therefore, on May 17, 2013, he filed in state court a motion for DNA testing using techniques that were not available at the time of trial.

The State sent the torn disciplinary report to the University of North Texas Center for Human Identification (UNTCHI) for collection and analysis of DNA. On July 9, 2013, UNTCHI reported that its testing had been inconclusive. At Pruett's request, the trial court appointed an expert, whose review revealed that the 12 allele was present in an amount above the analytical threshold at the D13 locus. Because the DNA profiles of both Nagle and Pruett contain the 12 allele at the D13 locus, neither of them could be eliminated as being a possible source of the DNA on the disciplinary report. Because the 12 allele is present at the D13 locus in the DNA profiles of approximately 20% of the Asian and Hispanic populations, 30% of the Caucasian population, and 40% of the African American population, approximately one-third of the inmates and guards at the prison where Nagle was murdered could not be excluded as contributing the DNA present on the torn disciplinary report. The state trial court concluded that the DNA evidence was not exculpatory and the TCCA affirmed. *Pruett v. State*, No. AP-77,037, 2014 WL 5422573 (Tex. Crim. App. Oct. 22, 2014). The Supreme Court denied Pruett's petition for a writ of certiorari. *Pruett v. Texas*, No. 14-8097, 2015 WL 302598 (U.S. Mar. 30, 2015).

Having described the relevant facts and procedural history, we now turn to consider whether Pruett has satisfied the statutory requirements for filing a successive habeas petition.

No. 15-40554

Pursuant to 28 U.S.C. § 2244(b)(3), we may authorize the filing of a successive habeas application only if we determine that the application makes a prima facie showing that the application satisfies the requirements of § 2244(b).  The claims Pruett seeks to raise in a successive petition were not presented in his initial federal habeas petition.  Therefore, he has to make a prima facie showing that his application satisfies the requirements of 28 U.S.C. § 2244(b)(2), which provides in relevant part that:

> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
>
> . . . .
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).

Pruett argues that he has made a prima facie showing that his application satisfies the requirements of § 2244(b)(2)(B).  He contends that the factual predicate for his claims could not have been discovered previously through the exercise of due diligence; furthermore, the facts underlying his claims would be sufficient to establish by clear and convincing evidence that no reasonable juror would have found him guilty of capital murder.

Specifically, Pruett contends that the factual bases for his claims did not exist until after he filed his first federal habeas petition in 2006:  (1) the technique used for the 2013 DNA analysis was not widely available until 2007 or 2008; (2) the National Academies of Science report, which discredits physical matching comparisons, and therefore discredits the State's expert's testimony about the tape wrapped around the handle of the murder weapon, was not

available until 2009; and (3) the undisclosed evidence that Harold Mitchell, an inmate witness, did not acknowledge that he wanted the authorities to transfer him out of state, could not have been discovered until the Special Prosecution Unit released its records in 2013.

Pruett argues that, in the light of the fact that there is no physical evidence connecting him to the murder, no reasonable juror would have convicted him if the jury had known (1) the results of the DNA analysis conducted in 2013, (2) that the State's expert's testimony about the tape was based on discredited "junk" science, (3) that numerous other people in the prison had a motive to see Officer Nagle dead and that the DNA evidence does not exclude those others, (4) that Harold Mitchell falsely testified that he had not been promised anything other than that the prosecutors would do their best to ensure his safety and might write a favorable letter to the parole board, and (5) the full extent of the negative treatment received by inmates who refused to testify for the State or who desired to testify for Pruett.

Even if we assume that Pruett has made a prima facie showing that the factual predicates for his claims could not have been discovered previously through the exercise of due diligence, he has not made a prima facie showing that the facts underlying his claims, "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii). For example, Pruett's theory that the murderer tore up the disciplinary report is inconsistent with his trial testimony that Officer Nagle tore up the report; Pruett's preparation for, and carrying out of, the murder of Officer Nagle was witnessed by several inmates (whose deals with the State were disclosed at trial); and he admitted to other inmates that he had killed Officer Nagle. *See Pruett*, 455 F. App'x at 480-81. Still further, the May 2013 DNA analysis,

which shows that Pruett and one-third of the others at the prison could have been the source for DNA found on the torn disciplinary report, does not exonerate Pruett.  Pruett has not demonstrated by clear and convincing evidence that the State's expert's testimony concerning the tape has been discredited by the 2009 report, which criticized bite-mark evidence, but did not address analysis of fiber evidence such as the tape.  In the light of the trial testimony which disclosed many of the problems with the inmates' credibility, Pruett has not shown by clear and convincing evidence that he would not have been convicted if the jury had known about Harold Mitchell's desire to be transferred out of state and had known further details about negative treatment of inmates who wanted to testify for Pruett or refused to testify for the State.  In sum, Pruett has not made a prima facie showing that his proposed successive application satisfies the requirements of § 2244(b)(2).

IT IS ORDERED that Pruett's motion for authorization to file a successive habeas corpus petition is DENIED.

IT IS FURTHER ORDERED that Pruett's motion for a stay of execution is DENIED.