# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-70021

United States Court of Appeals
Fifth Circuit

**FILED**
October 6, 2017

Lyle W. Cayce
Clerk

ROBERT LYNN PRUETT,

Plaintiff–Appellant,

versus

JACK CHOATE; LISA HARMON BAYLOR;
BRYAN COLLIER, Executive Director;
LORIE DAVIS, Director,
  Texas Department of Criminal Justice, Correctional Institutions Division;
JAMES JONES, Warden,

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas
No. 4:17-cv-02418

Before STEWART, Chief Judge, SMITH and PRADO, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-70021

Robert Pruett was sentenced to death for capital murder and is scheduled to be executed on October 12, 2017. On August 8, 2017, he sued under 42 U.S.C. § 1983, alleging that he was denied due process in state proceedings to obtain postconviction DNA testing. He sought injunctive relief regarding the DNA testing and a stay of execution. The district court dismissed the compliant. We affirm.

I.

In 2002, Pruett was sentenced to death for the murder of Daniel Nagle, a Corrections Officer. At the time, Pruett was serving a life sentence for a prior murder. The evidence showed that Nagle had written a disciplinary report against Pruett shortly before the murder. Nagle was stabbed eight times with a shank made of a metal rod sharpened at one end and wrapped in tape at the other end. The shank and torn disciplinary report were found at the scene. Both were tested for DNA, but no DNA profiles were developed at that time.[1]

The Texas Court of Criminal Appeals ("TCCA") affirmed on direct appeal, *Pruett v. State*, No.74,370, 2004 WL 3093232 (TCCA 2004), and denied Pruett's first state habeas corpus application, *Ex parte Pruett*, 207 S.W.3d 767 (TCCA 2005) (per curiam). The district court denied Pruett's first federal habeas petition. *Pruett v. Thaler*, No. C-06-CA-465-H (S.D. Tex. Aug. 12, 2010). This court affirmed. *Pruett v. Thaler*, 455 F. App'x 478 (5th Cir. 2011) (per curiam).

In 2013, Pruett filed a motion in state court for DNA testing on the torn disciplinary report under Texas Code of Criminal Procedure Chapter 64. The trial court granted the motion but concluded that the evidence was not exculpatory, and the TCCA affirmed. *Pruett v. State*, No. AP-77,037, 2014 WL

---

[1] Additional details may be found in *Pruett v. Thaler*, 455 F. App'x 478 (5th Cir. 2011).

No. 17-70021

5422573 (TCCA Oct. 22, 2014).  The Supreme Court denied certiorari.  *Pruett v. Texas*, No. 14-8097, 2015 WL 302598 (U.S. Mar. 30, 2015).

In 2015, Pruett filed three actions in federal court—a § 1983 suit,[2] a successive habeas petition,[3] and a motion for relief under Federal Rule of Civil Procedure 60(b)(6).[4]  We dismissed the § 1983 suit as an unauthorized success-sive habeas petition,[5] denied the motion to file a successive habeas petition,[6] and affirmed the denial of Rule 60(b) relief.[7]

On the day of his scheduled execution in 2015, Pruett moved for further DNA testing of evidence in state court under Chapter 64.  The trial court granted the motion and stayed the execution.  The DNA tests and state pro-ceedings that followed form the basis for the present case.  As Pruett had requested, the trial court ordered DNA testing of the metal rod and the tape wrapped around its handle, along with thirteen additional items.

The results of those tests were generally consistent with the pretrial DNA tests.[8]  DNA profiles consistent with Pruett were on his clothes; profiles consistent with the victim were on the victim's clothes; and no profile was obtained from testing the masking tape on the handle of the metal rod.  A swab of the rod, however, revealed an unknown female profile.  The trial court heard testimony from the analyst who performed both the pretrial DNA testing and the 2015 DNA testing.  It also heard evidence that the rod had been handled

---

[2] *In re Pruett*, 784 F.3d 287 (5th Cir. 2015) (per curiam).

[3] *In re Pruett*, 609 F. App'x 819 (5th Cir. 2015) (per curiam).

[4] *Pruett v. Stephens*, 608 F. App'x 182 (5th Cir. 2015) (per curiam).

[5] *In re Pruett*, 784 F.3d at 291.

[6] *In re Pruett*, 609 F. App'x at 823.

[7] *Pruett*, 608 F. App'x at 187.

[8] A more detailed explanation of the results can be found in *Pruett v. State*, No. AP-77,065, 2017 WL 1245431, at *6–9 (TCCA Apr. 5, 2017).

No. 17-70021

without gloves since trial. The court then found, among other things, that there was no female DNA profile on the rod before trial and that the unknown female DNA was unrelated to the conviction.

Pruett appealed to the TCCA. He alleged that (1) he was entitled to submit the unknown female DNA for comparison to the FBI and DPS databases, (2) he was entitled to funding for an expert witness to review the DNA testing results, (3) the trial court had abandoned the doctrine of res judicata, (4) he was entitled to review the data generated during testing, and (5) the trial court's order had not been fully executed. The TCCA rejected all of Pruett's claims, finding that nothing in Chapter 64 entitled Pruett to relief and that the trial court's order had been fully complied with. *See Pruett v. State*, No. AP-77,065, 2017 WL 1245431, at *9–14 (TCCA Apr. 5, 2017).

Pruett then brought the present § 1983 suit in federal district court. He maintained that his right to due process was denied by the arbitrary application of Chapter 64 and that the Eighth Amendment required a stay of execution. Pruett seeks injunctive relief compelling further testing of the evidence, production of materials for review, funds for an expert, submission of the evidence to the FBI and DPS for comparison, and a stay of execution. The state moved to dismiss under Federal Rule of Procedure 12(b)(1) and (6), claiming that federal courts lack jurisdiction to provide the relief Pruett seeks and that Pruett has failed to state a claim upon which relief should be granted. The district court granted the motion and dismissed.

II.

We review *de novo* the dismissal of a complaint under Rule 12(b)(1) and (6), applying the same standards used by the district court. *See Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017); *Spotts v. United States*, 613 F.3d 559, 565 (5th Cir. 2010). A federal court must dismiss for want of subject-

4

No. 17-70021

matter jurisdiction under Rule 12(b)(1) where that court lacks the statutory or constitutional power to adjudicate the plaintiff's claims. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Although we liberally construe the complaint, the plaintiff has the "burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

When reviewing a Rule 12(b)(6) motion to dismiss, we accept factual allegations as true and review constitutional questions *de novo*. *See Hollis v. Lynch*, 827 F.3d 436, 442 (5th Cir. 2016). "To survive a Rule 12(b)(6) motion to dismiss," the complaint must provide the plaintiff's grounds for entitlement to relief. *Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015).

## III.

We first address whether Pruett has stated a claim upon which relief can be granted in his allegation that the state has violated his right to due process[9] by applying Chapter 64 in a manner that is arbitrary and by denying him funding for expert assistance. Neither theory has merit.[10]

---

[9] Although the district court moved past this issue and dismissed the complaint as only seeking mandamus, we must address the due-process issue first. The district court's observations regarding mandamus are well taken, and Pruett's due-process arguments seem to be dressed-up allegations that the TCCA should be directed to apply Texas law properly. But it is possible to construe Pruett's artful pleadings as seeking constitutionally required due process. And given that this is a Rule 12(b) motion to dismiss, we must liberally construe the complaint. *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

[10] The complaint, stripped of a meritorious due-process claim, can rest on nothing but a petition for mandamus. Unless Pruett's due-process rights were violated, he has no avenue to relief except through a command for Texas courts properly to enforce Texas law. But as the district court explained, federal courts lack a "general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought." *Moye v. Clerk, DeKalb Cty. Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973) (per curiam); *see also Mahogany v. Muwwakkil*, 259 F. App'x 681, 682–83 (5th Cir. 2007) (per curiam). Accordingly, Pruett's complaint rises or falls on his due-process claim.

No. 17-70021

A.

Pruett claims that, by applying Chapter 64 in an arbitrary manner, Texas courts have deprived him of his federal due-process rights. Although defendants do not have a federal constitutional right to postconviction DNA testing, *Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72–74 (2009), if a state creates such a right—as Texas has done in Chapter 64—then the procedures to enforce that right must satisfy due process, *id.* at 69. But a "criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Id.* at 68. "The State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* at 69. Thus, Pruett has the burden to show that Texas's postconviction procedures "are fundamentally inadequate to vindicate the substantive rights provided," such that the procedures "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 69–71.

Pruett has not met this heavy burden. Although he provides many arguments as to why the TCCA was incorrect in its application of Chapter 64, there is nothing in the TCCA's opinion that "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 69. Instead, the TCCA carefully considered each of Pruett's contentions as to Chapter 64; it reviewed the evidence with due diligence, then found that Pruett was not entitled to further relief under Chapter 64. *See Pruett*, 2017 WL 1245431, at *9–14. Pruett's remaining averments concerning the full execution of the trial court's order and the legislative intent behind Chapter 64 boil down to the bare claim that the TCCA misapplied Texas law—but there is nothing so egregious in its application that rises to the level of a due-process violation.

6

No. 17-70021

B.

Pruett asserts that the TCCA violated his right to due process by denying funds for an expert to assist him in interpreting the DNA test results. Criminal defendants have a right to non-psychiatric experts "only if the evidence is both critical to the conviction and subject to varying opinion." *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993).[11] And even then, the defendant "must demonstrate something more than a mere possibility of assistance from a requested expert" and must show that "denial of such expert assistance resulted in a fundamentally unfair trial." *Id.*

Even if Pruett could meet the first two requirements, he has demonstrated nothing more than a "mere possibility of assistance" from his requested expert. *Id.* As the TCCA said, the most recent testing revealed a female DNA profile that was not found in the pretrial DNA testing. *Pruett*, 2017 WL 1245431, at *10. Because the shank has been handled by multiple people without gloves since trial, the almost inevitable conclusion is that it was contaminated post-trial. Pruett's conjectures to the contrary are nothing more than bare possibilities and cannot establish a due process right to expert assistance. Therefore, Pruett has not stated a claim upon which relief can be granted as to his alleged due-process violation.

IV.

Pruett appeals the denial of a stay of execution to allow him to pursue additional DNA testing. A stay of execution "is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing

---

[11] *Yohey* was decided in the context of a pretrial request for expert-witness funds. *See* 985 F.2d at 224. For purposes of this case, we assume, without deciding, that the same right and analysis extend to postconviction requests for expert assistance. But we note that postconviction defendants do not "have the same liberty interests as a free man." *Osborne*, 557 U.S. at 68.

7

its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "Thus, like any other stay applicants," Pruett must "satisfy all of the requirements for a stay." *Id.*

When reviewing an application for a stay, we consider

> (1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest.

*O'Bryan v. McKaskle*, 729 F.2d 991, 993 (5th Cir. 1984) (per curiam); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009); *Williams v. Thaler*, 524 F. App'x 960, 962 (5th Cir. 2013). "In a capital case, the possibility of irreparable injury weighs heavily in the movant's favor." *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982) (per curiam). The death penalty is irreversible, but there must come a time when the legal issues "have been sufficiently litigated and re-litigated so that the law must be allowed to run its course." *Id.* (quoting *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979)). And though the movant in a capital case "need not always show a probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of equities [i.e. the other three factors] weighs heavily in favor of granting the stay." *Celestine v. Butler*, 823 F.2d 74, 77 (5th Cir. 1987) (per curiam).

As explained above, Pruett has failed to present even a substantial case on the merits. Given that factor, alongside the significant litigation and re-litigation in both state and federal court, Pruett is not entitled to a stay.

The judgment, including the denial of a stay of execution, is AFFIRMED.