# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-41007

United States Court of Appeals
Fifth Circuit

**FILED**

October 6, 2017

Lyle W. Cayce
Clerk

In re: ROBERT LYNN PRUETT,

Movant.

Motion for Authorization to File
a Successive Petition for Writ of Habeas Corpus
in the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, SMITH, and PRADO, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

Robert Pruett is scheduled to be executed for capital murder on October 12, 2017. On October 3, he moved for this authorization to file a successive petition for writ of habeas corpus to raise the following claims:

(1) In view of recently discovered evidence, no reasonable juror would have voted to convict Pruett of capital murder.

(2) Pruett's due-process right to a fundamentally unfair trial was violated by the state's use of forensic science testimony that current

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-41007

scientific understanding exposes as false.

(3) Recently discovered evidence that was wrongfully withheld from Pruett's trial counsel in violation of *Brady v. Maryland* further buttresses the proposition that, in view of the totality of the evidence, no reasonable juror would have voted to convict Pruett of Officer Nagle's murder.

(4) The state violated Pruett's right to due process by failing properly to preserve the evidence.

Furthermore, Pruett asserts that the following facts underlying these claims could not have been discovered through the exercise of due diligence before he filed his last habeas petition in 2015: Other correctional officers had a motive to kill Officer Nagle; the state failed to disclose deals it made with inmates who testified against Pruett and failed to correct false testimony from those inmate-witnesses; the DNA profiles developed from the murder weapon in 2015 belong to a third person; DNA from the torn disciplinary report could belong to as many as one-third of the guards and inmates at the prison where the murder occurred; and scientific evidence presented at trial regarding physical matching of tape on the murder weapon is "junk science."

Pruett's first, second, and third claims were presented in his 2015 habeas application and thus are barred by 28 U.S.C. § 2244(b)(1). His fourth claim is barred by § 2244(b)(2)(B)(i). Even if Pruett were not barred by those provisions, his claims are barred by § 2244(b)(2)(B)(ii). Thus, his motion for authorization to file a successive habeas corpus petition is denied.

I.

In 2002, Pruett was sentenced to death for the murder of Daniel Nagle, a Corrections Officer. At the time, Pruett was serving a life sentence for a prior murder. The evidence showed that Nagle had written a disciplinary report against Pruett shortly before the murder. Nagle was stabbed eight times with a shank made of a metal rod sharpened at one end and wrapped in tape at the

## No. 17-41007

other end.  The shank and torn disciplinary report were found at the scene.  Both were tested for DNA, but no DNA profiles were developed at that time.  Several inmates testified at trial that they had seen or heard Pruett attacking Nagle, that Pruett had discussed a weapon, and that Pruett had stated his intention to kill Nagle.[1]

The district court denied Pruett's first federal habeas petition.  *Pruett v. Thaler*, No. C-06-CA-465-H (S.D. Tex. Aug. 12, 2010).  This court affirmed.  *Pruett v. Thaler*, 455 F. App'x 478 (5th Cir. 2011) (per curiam).

In 2013, Pruett filed a motion in state court for DNA testing on the torn disciplinary report under Texas Code of Criminal Procedure Chapter 64.  Pruett claimed—as he does now—that others at the prison had a motive to kill Nagle because there was a drug-smuggling and money-laundering operation at the prison, and Nagle was in the process of writing a grievance about it when he was murdered.  Accordingly, Pruett sought DNA testing on the disciplinary report to determine whether someone else had torn up the report to frame Pruett for Nagle's murder.

The trial court granted the motion.  The testing revealed DNA profiles that could have belonged to Pruett or to one-third of the others at the prison at the time of the murder.  The court concluded that the evidence was not exculpatory, and the Texas Court of Criminal Appeals ("TCCA") affirmed.  *Pruett v. State*, No. AP-77,037, 2014 WL 5422573 (TCCA Oct. 22, 2014).  The Supreme Court denied certiorari.  *Pruett v. Texas*, No. 14-8097, 2015 WL 302598 (U.S. Mar. 30, 2015).

Pruett moved to file a successive habeas petition in federal court based

---

[1] Additional details may be found in *Pruett v. Thaler*, 455 F. App'x 478 (5th Cir. 2011) (per curiam).

No. 17-41007

on (1) the purportedly exculpatory DNA from the disciplinary report, (2) the alleged due-process violation caused by the introduction of "junk science" at his trial, and (3) the state's failure to disclose deals made with inmate-witnesses and threats made against those witnesses. We denied the motion, concluding that the DNA evidence was not exculpatory, that the scientific testimony was not clearly "junk science," and that the purported information about the witnesses would not cause "no reasonable factfinder" to find Pruett not guilty in light of all the evidence. *In re Pruett*, 609 F. App'x 819, 823 (5th Cir. 2015) (per curiam).

On the day of his scheduled execution in 2015, Pruett moved for further DNA testing of evidence in state court under Chapter 64. The trial court granted the motion and stayed the execution. As Pruett requested in his motion, the trial court ordered DNA testing of the metal rod and the tape wrapped around its handle, along with thirteen additional items. Although a DNA profile of an unknown female was found on the murder weapon, the trial court found that that was the result of post-trial contamination, given that no such profile had been found in the pretrial DNA testing. The TCCA affirmed, finding that the evidence was not exculpatory. *See Pruett v. State*, No. AP-77,065, 2017 WL 1245431, at *9–14 (TCCA Apr. 5, 2017). The Supreme Court denied certiorari. *Pruett v. Texas*, 2017 WL 3008846 (U.S. Oct. 2, 2017). Pruett then filed the instant motion for successive habeas.

II.

We authorize a successive habeas petition only if "the application makes a prima facie case" that the requirements of § 2244(b) are satisfied. 28 U.S.C. § 2244(b)(3)(C). Any claims presented in the successive habeas petition that were already "presented in a prior application shall be dismissed." § 2244(b)(1). All new claims must either (1) be based on a new and previously

4

No. 17-41007

unavailable rule of constitutional law or (2) allege factual predicates that "could not have been discovered previously through the exercise of due diligence" and that "if proved and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for the constitution error, no reasonable factfinder would have found the applicant guilty of the underlying offense." § 2244(b)(2)(A)–(B).

## III.

### A.

Much of Pruett's motion to file this successive habeas petition is nothing more than a repetition of the claims he made in his 2015 motion to file a successive habeas petition. For instance, he claimed in 2015 that his due-process rights were violated because the state introduced expert "junk science" testimony about the tape on the murder weapon—he now raises the same claim. Similarly, Pruett's allegations regarding his actual innocence, the DNA from the disciplinary report, the treatment and bargains regarding inmate-witnesses, and the motives of others to kill Nagle were all presented in his 2015 motion. And although he provides some new evidentiary details, such as a new affidavit to show that the tape evidence is "junk science," his claims remain essentially the same as what he previously asserted.[2] Thus, these claims are barred by § 2244(b)(1).

### B.

Pruett does bring a new claim regarding the state's alleged violation of

---

[2] *See Fierro v. Johnson*, 197 F.3d 147, 151 (5th Cir. 1999) (allegations of "new evidence that give[ ] more credence" to a previous claim are still construed as raising the prior claim). Furthermore, these new evidentiary details would be barred by § 2244(b)(2)(B)(i) since Pruett has not shown how any of these facts could not have been discovered previously even by exercising due diligence. For instance, the affidavit regarding the tape evidence was executed just four days after he moved to file a successive habeas petition in 2015.

due process by failing properly to preserve the murder weapon. Pruett's theory is that Texas law requires the preservation of the murder weapon and that the state has allowed it to become contaminated through gross negligence, thereby violating Pruett's due-process rights. We are doubtful that Pruett has alleged a true due-process violation—it is unlikely that even a grossly negligent failure to comply with state law "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."[3] But we need not decide that, because even if Pruett has alleged a constitutional violation, it is plain that the factual predicates for this claim could have been discovered through the exercise of due diligence. *See* § 2244(b)(2)(B)(i).

As the Texas trial court noted, the state had made the murder weapon available for DNA testing for over fifteen years before Pruett's request. *Pruett*, 2017 WL 1245431, at *7. And Pruett easily could have requested the same DNA testing of the murder weapon when he sought DNA testing of the disciplinary report in 2013. *See id.* Thus, there is no reason why Pruett could not have discovered the contamination of the murder weapon before filing his 2015 motion to file a successive habeas petition.[4] Accordingly, this claim is barred by § 2244(b)(2)(B)(i).

## C.

But even if all four claims were not barred by the aforementioned provisions, Pruett cannot make a *prima facie* case that the facts underlying these

---

[3] *Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009); *see also Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986) (holding that mere negligence does not implicate the right to due process); *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (stating that due process is violated only by a "bad faith" failure to preserve evidence).

[4] Pruett's reply claims that he was diligent because he filed his motion the day after the TCCA's opinion became final. This misses the above-discussed fact that he easily could have sought the relevant evidence and discovered the underlying issues years before he actually did.

claims would be sufficient to establish by clear and convincing evidence that "no reasonable factfinder" would have found Pruett guilty when considering the evidence as a whole. § 2244(b)(2)(B)(ii). For example, the 2013 DNA analysis of the disciplinary report showed only that Pruett and one-third of the others at the prison could have been the source of the DNA on the report; this is hardly exculpatory. And the 2015 DNA analysis of the murder weapon provided only a DNA profile of an unknown female that was not found when the pretrial DNA analysis was performed—the only likely conclusion from this is that the weapon was contaminated post-trial. *Pruett*, 2017 WL 1245431, at *10. Thus, none of the DNA testing helps Pruett.

Moreover, the fact that the prosecution failed to disclose some impeachment evidence for two inmate-witnesses and some negative treatment of other witnesses does not preclude finding Pruett guilty beyond a reasonable doubt, given that trial testimony had already exposed credibility issues with the inmates. Finally, even if the prosecution had not introduced expert testimony about the tape on the murder weapon, a reasonable factfinder still could have credited the numerous eyewitnesses who testified that they saw Pruett murder Nagle or heard Pruett discuss murdering Nagle. Therefore, Pruett has not made a *prima facie* showing that no reasonable juror would have voted to convict him—let alone that the evidence of his innocence is "overwhelming"—and his proposed petition is barred by § 2244(b)(2)(B)(ii).

The motion for authorization to file a successive habeas corpus petition is DENIED. Pruett's motion for a stay of execution is also DENIED.